No. 34,411

CLAUDE E. SOWERS, *Appellee,* v. BERT C. WELLS, *Appellant.*

(95 P. 2d 281)

Opinion filed November 10, 1939.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley* and *Milton Zacharias,* all of Wichita, for the appellant.

*Clarence R. Sowers* and *Claude E. Sowers,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action for damages predicated upon an alleged slanderous statement. The defendant has appealed from an order sustaining plaintiff's motion to strike a certain paragraph of his answer.

Plaintiff is an attorney, and according to his petition, had been engaged in the practice of law in the state of Missouri for more than five years, had been recently admitted to practice law in the state of Kansas and was engaged in the practice while presenting a claim for damages against the city of Wichita, when the alleged slanderous

remarks were made by the defendant. The defendant, city manager, was sitting with the city commissioners, in accordance with his practice, for the purpose of considering claims filed against the city. We are told the instant claim was for damages against the city arising out of claimant's assault by a city police officer. The petition alleged:

"Defendant . . . without provocation, did make, publish, slander and maliciously speak of and concerning the plaintiff the following false and untrue words of and concerning this plaintiff's profession and avocation, to wit: 'I have plenty on you,' 'I know all about you,' 'I can put you where you belong,' 'We got your record over there,' meaning the police department, 'All you have been doing is defending a bunch of crooks and poor hoodlums,' all of which caused the plaintiff public humiliation and embarrassment, whereby this plaintiff has been damaged in the sum of fifty thousand dollars ($50,000)."

The answer contained a general demurrer, an admission of the duration and location of plaintiff's practice, a general denial of all other allegations contained in the petition, and then alleged:

4. "Without waiving his general denial heretofore pleaded of the making of such statements as alleged in this petition, this defendant alleges and states if such statements or any of them were made as alleged in said petition, then in that event said statements were in fact true.

5. "Without waiving his general denial as heretofore pleaded and for further answer, this defendant further alleges and states that if the statements, or any of them, alleged to have been made by him in the plaintiff's petition, were actually made as alleged, under the conditions set out in the plaintiff's petition, then in that event the statements were privileged in that this defendant was at that time, and at all times material hereto, the duly appointed, qualified and acting city manager of the city of Wichita. That at the time in question this defendant was sitting with the board of commissioners of the city of Wichita in a regular meeting of said board, in which said board of commissioners were hearing evidence and statements on a claim made by the plaintiff, representing one Harry Wisdom, for damages against the city of Wichita. That this defendant as such city manager in such hearing where the board of commissioners of such city were sitting as a judicial body in determining such a matter, as a public officer, was under obligation to disclose to the commission his opinion of all matters relevant to the matter with which the board was then concerned.

6. "Without waiving his general denial as heretofore pleaded and for further answer, this defendant alleges and states that if the statements or any of them, alleged to have been made by him, in the plaintiff's petition, were actually made as alleged under the conditions set out in the plaintiff's petition, then, in that event, they constituted criticism of the activities of the plaintiff, which being those of a public officer of the court were matters of public concern, and the defendant as a public officer, sitting with the board of commissioners under the law, was under obligation to express his actual opinion upon such matters for the reason that such information was material to the cause then pending before the board of commissioners.

7. "That if said statements were made as alleged in said petition that they were relevant to the matters under consideration as alleged in this answer and were either absolutely or conditionally privileged as aforesaid."

Plaintiff moved to have paragraphs five and six of the answer stricken on the ground the averments therein contained were redundant, surplusage and constituted no defense to plaintiff's cause of action. The motion was overruled as to paragraph five and sustained as to paragraph six. The defendant contends the court erred in striking paragraph number six.

Before discussing the merits of the appeal we are confronted with a preliminary question. Appellee suggests the ruling does not involve the merits nor determine the action, and is therefore not an appealable order, and can only be reviewed in this court after final judgment. The real question before us, however, is whether paragraph six of the answer actually pleads a valid defense in addition to those defenses previously pleaded. If it does, then the ruling involves the merits and to the extent of that defense determines the action and is an appealable order. Defendant is entitled to have that question determined before final judgment.

Does it constitute a valid additional defense as pleaded? Let us first examine the first five paragraphs of the answer. In addition to the demurrer, the answer denied the alleged slanderous statements were made, and asserted that if they were made they were true. Paragraph five of the answer in substance alleged: If the statements or any of them were made, they were privileged in that (a) defendant was a public officer, the acting city manager; (b) at the time in question defendant was sitting with the board of city commissioners in a regular meeting of the board in which the board was hearing evidence and statements on a claim made by plaintiff for damages against the city; (c) the board was sitting as a judicial body and defendant, as a public officer, was under obligation to disclose to the commissioners his opinion on all matters relevant to the matter with which the board was then concerned.

An analysis of paragraph six discloses defendant attempted thereby to plead either facts consistent with another theory of privileged communication or the defense of privileged comment or criticism. (For strict distinction between those defenses, see 36 C. J., Libel and Slander, § 280 [3].) For the purpose of this opinion it is unnecessary to deal with the technical refinements of those distinctions. Irrespective of which of those particular defenses defendant may have intended, it is obvious the defense he

attempted to plead was based upon the allegation that plaintiff was engaged in a matter of public concern, and that as an attorney he was a public officer. Prior to paragraph six he had pleaded facts which disclosed the public nature of the claim and the occasion at which the alleged defamatory utterance was made. The only allegation in paragraph six which constituted new matter was the charge that plaintiff was a public officer of the court. All we need to decide in the present action is whether that additional or new allegation in paragraph six constituted a valid defense. In this connection it should be clearly kept in mind that we are not called upon at this stage of the present action to decide what kind of comment or criticism is permitted against persons generally who are engaged in activities in which the public has a concern. Litigants have the right to elect the theories upon which they will prosecute actions or defend them. By paragraph six defendant has elected to plead a defense applicable to communications concerning public officials. It is that defense and none other with which we are now concerned.

What is a "public office" and who is a "public officer"? While the authorities are not in complete harmony in defining the term "public office," or "public officer," it universally has been held that the right to exercise some definite portion of sovereign power constitutes an indispensable attribute of "public office." (46 C. J., p. 928, § 20*b*; *Wyman's Administrative Law,* p. 163, § 44, Anno. 53 A. L. R. 595; 93 A. L. R. 334; 4 Words & Phrases, 5th Series, pp. 332-334.) In *Kingston Associates v. La Guardia,* 281 N. Y. S. 390, 156 Misc. 116, in distinguishing between "public office," and an "employment," the New York court said:

"There is, however, one indispensable attribute of public office, namely, the right to exercise some portion of the sovereign power. 'Public office' has been defined by Mechem in his work on Public Officers, previously referred to (pages 1, 2), as 'the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exrcised by him for the benefit of the public.' The author quotes with approval (page 4) the following language of the judges of the supreme court of Maine in Opinion of Judges, 3 Greenl. (3 Me.) 484: 'We apprehend that the term "office" implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office . . . The power thus delegated and possessed may be a portion belonging sometimes to one of the three great departments and sometimes to another; still it is a legal power which may be rightfully exercised, and in its effects it will bind the rights of others, and be subject to revision and correction only according to the standing laws of the state. An

employment merely has none of these distinguishing features.' In *Dawson v. Knox*, supra, the same thought was expressed by the appellate division, third department (231 App. Div. 490, page 492, 247 N. Y. S. 731, 734): 'The duties of a public official involve some exercise of sovereign power—those of a public employee do not.' In *People, ex rel. Hoefle, v. Cahill*, 188 N. Y. 489, 494, 81 N. E. 453, 454, the court of appeals quoted with approval the following language of the appellate division in *People, ex rel. Corkhill, v. McAdoo*, 98 App. Div. 312, 314, 90 N. Y. S. 689, 691: 'The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small.' " (p. 398.)

In matter of *Dawson v. Knox*, 231 App. Div. 490, 492, 247 N. Y. S. 731, it was said:

"The holder of a public office is in the employment of the public, but all those who are in the public employment are not public officials and do not hold public office." (p. 492.)

In *State, ex rel. Pickett, v. Truman*, 333 Mo. 1018, 64 S. W. 2d 105, the Missouri court held a delinquent tax attorney was not a public officer, though his duties were substantially the same as those of a special tax attorney in New Mexico. In *McDuffie v. Perkerson*, 178 Ga. 230, 173 S. E. 151, 157, the Georgia court, in holding a grand juror was not a public officer, said:

"In this state it has been held that 'An individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by law, is a public officer.' *Bradford v. Justices*, 33 Ga. 332; *Polk v. James*, 68 Ga. 128 (2); *Wiley v. Sparta*, 154 Ga. 1, 14 (114 S. E. 45, 25 A. L. R. 1342); 46 C. J. 928, § 19. In 22 R. C. L. 372, § 2, it is said: 'Since one who holds an office is an "officer," it becomes necessary to ascertain what, properly considered, is an "office." The definitions of this word, as given by the text writers and courts, are not in entire harmony. Blackstone (2 Com. 36) defines an office as the right to exercise a public or private employment, and to take the fees or emoluments thereunto belonging. Thus it has been said that every one who is appointed to discharge a public duty and who receives a compensation in whatever shape, whether from the crown or otherwise, is a public officer. A distinction is drawn between public and private officers, the former being those whose functions and duties concern the public. The term "public officer" involves the idea of tenure, duration, fees or emoluments, and powers, as well as that of duty. These ideas or elements cannot properly be separated and each considered abstractly. All, taken together, constitute an office. But it is not necessary that an office should have all of the above-named characteristics, although it must possess more than one of them, *and the mere fact that it concerns the public will not constitute it an office.*' " (p. 233.) (Italics inserted.)

In *State v. Fernandez*, 40 N. M. 288, the New Mexico court held

that a special tax attorney employed by the state tax commission was not a public officer, and after reviewing the various attributes of a public office, said:

"But, of these elements, any or all may exist in the case of an ordinary employment *except the distinctive one that sovereign power must be vested in the position by the legislature, else it is not a public office.* It is therefore useless to consider other so-called elements of public office when it can be definitely stated that no sovereign power is vested in the special tax attorney." (p. 297.) (Italics inserted.)

An attorney is an officer of the court, but he is not an officer of the state, and the admission of a person to practice as an attorney is not an appointment to public office. (Throop on Public Officers, pp. 14, 15, §§ 14, 15.) An attorney or counsellor does not hold an office in a constitutional sense, but exercises a privilege or franchise. (*Matter of Burchard*, 27 Hun [N. Y.] 429; *Hamilton v. Wright*, 37 N. Y. 502; *Ex Parte Garland*, 4 Wall. [U. S.] 333; *Cohen v. Wright*, 22 Cal. 297; *Ex Parte Gregory Yale*, 24 Cal. 241.)

On the subject of an attorney's relationship to the public and to the courts, appellant directs our attention to the Preamble to the Canons of Professional Ethics, adopted by the American Bar Association, which reads:

"In America, where the stability of courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the republic, to a great extent, depends upon our maintenance of justice, pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men."

We need not dwell in the instant case upon the high purpose and duties of courts generally, nor upon the solemn duty of members of the legal profession, to maintain and improve the processes of administering justice. The existence of that duty must be and is conceded by all who are worthy of the privilege conferred upon them. Every lawyer who is a credit to the legal profession will freely concur in the belief and conviction that it is his duty to exercise his privilege, license or franchise, in such manner as to advance the ends of justice and not so as to imperil or thwart them. That duty, however, does not arise from the fact he has been elected or appointed to "public office," for he has not been made a "public officer." That

duty inheres in the faithful exercise of his private right and personal privilege to participate in the processes of administering justice. It is that duty which constitutes him an officer of the court. Failing in that duty through willful abuse of the privilege, he will be subjected to judicial discipline or disbarment. That duty, however, which inheres in his right to engage in the private practice of law does not constitute him a "public official," or a "public officer," within the constitutional or statutory sense of the term. In a disbarment proceeding, *In the Matter of H—— S——*, 229 Mo. App. 44, 69 S. W. 2d 325, the Missouri court held:

"A license to engage in the practice of the law is not granted as of right, but as a privilege granted the lawyer by the state and comes burdened with conditions of subsequent good behavior and professional integrity." (Syl. ¶ 4.)

"A lawyer is not a public officer in the constitutional or statutory sense of the term, but he is an officer of the court and as such owes a definite obligation to the public as a whole in the matter of the proper administration of justice." (Syl. ¶ 3.)

To the same effect is the even more recent case, *In re Lacy,* (Mo. App.) 112 S. W. 2d 594, in which the Missouri court again held:

"An attorney is not 'public officer' in constitutional or statutory sense, but is 'officer of court' obligated to public for proper administration of justice." (Headnote, ¶ 15.)

The motion to strike paragraph six of the answer was properly sustained.

The judgment is affirmed.