No. 49,858

Myron S. Steere, *Appellant,* v. Roderick B. Cupp, *et al., Appellees.*

(602 P.2d 1267)

Opinion filed November 15, 1979.

*Morris D. Hildreth,* of Becker, Hildreth, Eastman & Gossard, of Coffeyville, argued the cause and was on the brief for the appellant.

*Robert E. Northrip,* of Shook, Hardy & Bacon, of Kansas City, Missouri, argued the cause and *John T. Martin* and *Sam L. Colville,* of the same firm, and *George A. Lowe,* of Lowe, Terry & Roberts, of Olathe, were with him on the brief for the appellee The Kansas City Star Company.

*Milton P. Allen,* of Allen & Cooley, of Lawrence, argued the cause and was on the brief for the appellee The World Company.

*Thomas Ruzicka,* of Breyfogle, Gardner, Davis & Kreamer, of Olathe, argued the cause and *Robert W. Green,* of Robert W. Green, Chartered, of Ottawa, and *William H. Sanders,* of Blackwell, Sanders, Matheny, Weary & Lombardi, of Kansas City, Missouri, were with him on the brief for the appellees Ottawa Herald, Inc., Robert B. Wellington and Harris Enterprises, Inc.

*Larry J. Tyrl,* of James, Odegard, Millert & Houdek, of Kansas City, Missouri, argued the cause and *J. D. James,* of the same firm, and *Edward M. Boyle,* of Payne & Jones, Chartered, of Olathe, and *Richard N. Winfield* and *Andrew M. Low,* of Rogers & Wells, of New York, New York, were with him on the brief for the appellee the Associated Press.

*John L. Richeson,* of Anderson, Byrd & Richeson, of Ottawa, argued the cause and was on the brief for the appellees Roderick B. Cupp, Edwina W. Cupp, B. H. Brewer d/b/a Ottawa Broadcasting Company; and Ken MacNevin.

The opinion of the court was delivered by

Herd, J.: This is an action for libel arising out of publication of a series of articles regarding the events surrounding plaintiff Myron S. Steere's defense of Nellie L. Schoonover in a trial for first degree murder and his subsequent public censure by this

court. Defendants in this action are Roderick B. Cupp, Edwina W. Cupp, B. H. Brewer d/b/a Ottawa Broadcasting Company; Ken MacNevin; Ottawa Herald Inc.; Robert B. Wellington; Harris Enterprises, Inc.; The Kansas City Star Co., Inc.; The World Co.; and the Associated Press. The trial court granted defendants' motion for summary judgment and Steere appeals. We affirm.

The facts giving rise to this action are lengthy but necessary for a full picture of the case. Plaintiff, Myron S. Steere, is an attorney admitted to practice in the State of Kansas. In 1973, he represented Nellie Schoonover, who was charged with the murder of her husband. The Schoonover trial and its significance to this case will be discussed later in this opinion. Defendants Roderick B. Cupp, Edwina W. Cupp and B. H. Brewer do business as Ottawa Broadcasting Co. and Ken MacNevin is a reporter and newscaster for the station. They operate radio station KOFO in Ottawa. Defendant, Ottawa Herald, Inc. is a Kansas corporation which publishes the Ottawa Herald, a daily newspaper circulated in Northeast Kansas. The editor of the paper is Robert B. Wellington. Harris Enterprises, Inc. is a Kansas corporation and is the majority stockholder in Ottawa Herald, Inc. The Kansas City Star Co. is a Missouri corporation which owns and publishes The Kansas City Star and The Kansas City Times. The World Co. is a Kansas corporation which owns and publishes the Lawrence Daily Journal-World. The Associated Press (AP) is a non-profit New York membership corporation engaged in the collection and dissemination of news for publication or broadcast by its members and subscribers. The Ottawa Broadcasting Co., the Ottawa Herald, Inc., Harris Enterprises, Inc., The Kansas City Star Company and The World Company are members of AP.

J. W. Schoonover was found murdered at his home on October 24, 1973. When his wife, Nellie, was suspected of the crime, she employed plaintiff to represent her. Three days later, Nellie Schoonover was charged with first degree murder and plaintiff was appointed her attorney under the Indigent Defendants Act. K.S.A. 22-4501 *et seq.* On March 4, 1974, while acting as Mrs. Schoonover's attorney, Steere entered into a contingent fee contract with her. It provided that if Mrs. Schoonover were acquitted of murder or convicted of a crime which would not deprive her of her right of inheritance from her husband, plaintiff would receive all of her inheritance, less $10,000.00. The contract was drafted by Steere but its existence was kept secret until plaintiff withdrew

as counsel after trial. Nellie Schoonover was convicted of first degree murder on March 25, 1974, and thereafter, in May 1974, plaintiff submitted his claim voucher in the amount of $4,229.48 to the State for his attorney's fee. The claim was paid.

After Steere was permitted to withdraw, Mrs. Schoonover's new counsel revealed the contingent fee contract and initiated a proceeding pursuant to K.S.A. 60-1507, alleging she had been denied her right to effective counsel. Mrs. Schoonover testified plaintiff presented the contract to her and told her if she wanted him to continue to represent her, she would have to sign the contract. The district court denied Mrs. Schoonover's motion to set aside the conviction and referred the matter of plaintiff's possible misconduct to the disciplinary administrator for investigation. She appealed the trial court's denial of the motion to this court. The primary issue on appeal was whether the existence of the contingent fee contract amounted to ineffective assistance of counsel. We held counsel had indeed been guilty of unprofessional conduct in entering into the contract with his client in a criminal action. We, however, refused to find a violation of the constitutional rights of the accused and affirmed the trial court. *Schoonover v. State,* 218 Kan. 377, 543 P.2d 881 (1975), *cert. denied* 424 U.S. 944 (1976).

The State Board of Law Examiners found Steere had violated DR 2-106(C) (214 Kan. lxxxii) by entering into a contingent fee contract in a criminal case:

"[T]he State has stipulated that the respondent had no intent to violate the disciplinary rule or the law and the contingent fee contract was an oversight. The State further stipulated the contingent fee contract was entered into at the suggestion of Nellie L. Schoonover. The panel is of the opinion that there is a disputed question of fact on that issue, but we accept the stipulation  . . . ."

The panel recommended public censure which Steere accepted. The discipline was ordered invoked by this court. *In re Steere,* 217 Kan. 276, 536 P.2d 54 (1975).

On May 28, 1975, Ken MacNevin, working for KOFO Radio, telephoned the disciplinary administrator's office and spoke to then administrator Earl Hatcher. He requested the status of the case involving the contingent fee contract. Mr. Hatcher informed him a decision had been reached but it could not be disclosed until it had been filed with the Clerk of the Supreme Court. MacNevin subsequently called Lewis Carter, Clerk of the Su-

preme Court, who informed him plaintiff had been publicly censured. MacNevin composed a news account of the matter and the story was broadcast over KOFO Radio that day. No allegations are made by plaintiff regarding this news account. MacNevin then called Huell Warren of the Associated Press in Kansas City and relayed the information Mr. Carter had given him. Warren telephoned Lew Ferguson, the AP correspondent in charge of the Topeka Bureau to check out the story in further detail. He requested that Ferguson verify the recommendation of the State Board of Law Examiners. Ferguson telephoned Mr. Carter and was informed no recommendation had been made. Ferguson telephoned Warren and advised him to hold the story until it could be confirmed. Later in the afternoon on May 28, 1975, Ferguson again telephoned Mr. Carter and learned that the panel had recommended that plaintiff be publicly censured. Carter informed Ferguson that although the story was not formally released to the public, Ferguson could proceed with his reporting of the matter because other individuals in the Ottawa area had obtained the same information from either his office or from the office of the disciplinary administrator. No details were given by Carter regarding the panel's findings and conclusions. Ferguson called Warren about the conversation he had had with Carter. Warren then prepared a news report based upon the information he had received from Ferguson and MacNevin. It stated:

"Topeka, Kan. (AP) - The State Board of Law Examiners recommended to the Kansas Supreme Court Wednesday that it publicly censure a lawyer at Ottawa, Kan., for his conduct of the defense in a sensational murder case.

"The examiners found that Myron S. Steere required Mrs. Nellie Schoonover to enter a contingency agreement with him after he was appointed to defend her in Franklin County District Court.

"In her plea for a new trial after she had been convicted and sentenced to life in prison for slaying her 80-year-old husband, Mrs. Schoonover testified that Steere got her to agree to give him all but $10,000 of Schoonover's estate if he was able to obtain her acquittal.

"Such a contingency agreement is a violation of the code of ethics of the Kansas Bar Association. Judge Michael Barbara of Topeka, who presided in the Schoonover trial on a special assignment, said he would call Mrs. Schoonover's testimony about Steere to the attention of the law examiners.

"The examiners could have recommended a penalty as severe as disbarment. The Supreme Court can accept Wednesday's recommendation or it may prescribe a stiffer penalty or none at all.

"J. W. Schoonover was shot to death on the night of October 24, 1973, at his

farm five miles southwest of Ottawa. He was the ninth husband of the former Nellie Rutledge, who had served prison sentences for mail fraud in a lonely hearts club and on a bad check charge. They had eloped to Miami, Oklahoma, on July 12 after she had been his housekeeper for about two weeks. She was on parole from prison.

"Mrs. Schoonover is at the Kansas Women's Reformatory at Lansing, serving the life sentence imposed by Judge Barbara after her conviction on March 25, 1974. Represented by new lawyers, she appealed her conviction and sentence to the Kansas Supreme Court; and it is expected to take up the case in September."

On May 29, 1975, AP transmitted a further news release to its members. The dispatch, prepared by Lew Marks, an AP employee in the Kansas City Bureau, was virtually a rewrite of the earlier story written by Warren containing alterations in verbs and length of the story. On June 3, 1975, the AP Kansas City Bureau transmitted to certain of its members a follow-up report based upon the earlier report written by Warren.

Plaintiff's complaint centered around the statements in the first and second paragraphs of the news release. The statements alleged he was publicly censured for "his conduct of the defense" and because he "required" Mrs. Schoonover to sign the contingent fee contract. Steere alleged the defendants negligently, carelessly, recklessly and maliciously published these statements. He further alleged the statements were false, unfair and inaccurate. He also complained that the Ottawa Herald and Harris Publications, in addition to printing stories containing the alleged false phrasing, printed parts of Mrs. Schoonover's pleadings and brief where he was characterized as "dishonest" and as "bilking" her. He alleged the statements were untrue and were printed recklessly with utter disregard for the truth.

All of the defendants filed motions for summary judgments accompanied by affidavits and briefs. The trial court sustained all defendant's motions for summary judgment and its findings of fact are summarized as follows. The court found Steere was a public official because he was appointed by the district court to represent an indigent defendant, and because he was paid by the State of Kansas. The court found he was a public figure for all purposes because of the extent of his activity in Ottawa and Franklin Counties. In addition, the court found Steere was a public figure for the limited purpose of the litigation by "virtue of his role as the court-appointed attorney for Mrs. Schoonover and of his public censure by the Supreme Court of Kansas for his

conduct as her attorney." Finally, the court found no actual malice had been shown in order for Steere to recover.

In the case of defendants the Ottawa Herald, Inc., Robert Wellington and Harris Enterprises, Inc., The Kansas City Star, The World Company and the Associated Press, the trial court found the use of the two questioned phrases in newspaper stories and radio broadcasts published by these defendants was not actionable. The court stated the two phrases were substantially true. The court found the remaining newspaper articles in the Ottawa Herald regarding the complaint filed by Mrs. Schoonover to be "impartial and reasonably accurate" and "when considered as a whole, present both sides of the controversy." In the case of defendants Roderick Cupp, Edwina Cupp, and B. H. Brewer, d/b/a Ottawa Broadcasting Co., and Ken MacNevin, the trial court found the news account aired on May 29, 1975 had been edited by the personnel of KOFO to delete the word "required." Later broadcasts on June 5, 1975, October 29, 1975, and December 13, 1975, were all received from the AP and did not originate with KOFO Radio. These broadcasts did not contain the two phrases Steere regards as actionable.

Appellant Steere contends the trial court erred in concluding the media publications were substantially true and were absolutely or conditionally privileged. He claims the court erred in holding plaintiff was a public figure and public official and in finding the facts failed to show either negligence or malice.

We will begin by resolving the question of plaintiff's status as a public or private figure. It is well recognized that publications concerning a public official or public figure are qualifiedly privileged and are actionable only if malice can be shown. *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975 (1967). In *Rosenblatt v. Baer,* 383 U.S. 75, 86, 15 L.Ed.2d 597, 86 S.Ct. 669 (1966), the U.S. Supreme Court stated:

"Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply."

See also Annot., 19 A.L.R.3d 1361, 1371: "The employee's posi-

tion must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy."

In *Rawlins v. Hutchinson Publishing Co.,* 218 Kan. 295, 298, 543 P.2d 988 (1975), an invasion of privacy case, we held a policeman was a public official, a person "in whose conduct the public has a vital interest." In *Sowers v. Wells,* 150 Kan. 630, 633, 95 P.2d 281 (1939), we stated, ". . . it universally has been held that the right to exercise some definite portion of sovereign power constitutes an indispensible attribute of 'public office.' "

"A lawyer engaged in the private practice of the law does not hold a 'public office,' and is not a 'public officer.' He holds a license, privilege or franchise, under which he practices his profession as an officer of the court, and his admission to so practice is not an appointment to 'public office,' nor does it make him a 'public officer.' " *Sowers v. Wells,* 150 Kan. 630, Syl. ¶ 1.

We find Myron Steere was acting as an officer of the court in his capacity as Mrs. Schoonover's court appointed attorney and not as a public official. His position did not afford him the opportunity to exercise any sovereign power, an essential element of public office. The fact that he was paid by the State of Kansas for his services does not make him a public official.

We now turn to the question of whether Steere is a public figure. It is well settled there are two types of public figures. There are those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974); those persons who are "intimately involved in the resolution of important public questions, or by reason of their fame, shape events in areas of concern to society at large," *Curtis Publishing Co. v. Butts,* 388 U.S. at 164. There are also those persons who are classed as public figures for a limited purpose because they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz v. Robert Welch, Inc.,* 418 U.S. at 345; see also *Associated Press v. Walker,* 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975 (1967).

The reason for extending the New York Times rule to public figures is twofold. As stated in *Wolston v. Reader's Digest Assn., Inc.,* _____ U.S. _____ , 61 L.Ed.2d 450, 458, 99 S.Ct. 2701 (1979):

"First, we recognized that public figures are less vulnerable in injury from defamatory statements because of their ability to resort to effective 'self-help.' They usually enjoy significantly greater access than private individuals to channels of effective communication, which enable them through discussion to counter criticism and expose the falsehood and fallacies of defamatory statements. [Citation omitted.] Second, and more importantly, was a normative consideration that public figures are less deserving of protection than private persons because public figures, like public officials, have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.' "

We have considered the recent cases of *Wolston* and *Gleichenhaus v. Carlyle,* 226 Kan. 167, 597 P.2d 611 (1979), and cases cited therein. We find appellant was a public figure for all purposes by virtue of his general fame and notoriety in the community. Myron Steere had been practicing law for 32 years in Franklin County. For 8 of those years he was the county attorney. He was well known in the community for the publicity he received in that capacity. After Steere ended his service as county attorney, he served as special counsel for the board of county commissioners in a controversial dispute over the construction of a new courthouse. During plaintiff's 32 years in Franklin County, he was a prominent participant in numerous social activities and served as an officer and representative for many professional, fraternal and social activities. He was well known to the public prior to his defense of Nellie Schoonover.

We are mindful of the court's caution against assuming "that a citizen's participation in community and professional affairs" automatically renders an individual a public figure for all purposes. *Gertz v. Robert Welch, Inc.,* 418 U.S. at 352. The court noted in that case the petitioner Robert Gertz, an attorney, had been active in community and professional affairs. He had, however, achieved no general fame or notoriety in the community. The court noted "[n]one of the prospective jurors called at the trial had ever heard of petitioner prior to this litigation . . . ." *Gertz v. Robert Welch, Inc.,* 418 U.S. at 352. In contrast, Steere's active involvement in important community affairs has made him well known to the public. He has achieved a position of some influence in local affairs capped by his representation of Nellie Schoonover in her well publicized, famous murder trial. We find the totality of his experience in Franklin County gave Myron Steere the requisite fame and notoriety in his community to be declared a public figure for all purposes.

We now turn to whether Steere may be classed as a public figure for the limited purpose of this controversy. As the attorney for Nellie Schoonover, he took an active role in her representation. When the murder occurred, he took Mrs. Schoonover into his own home, became her private counsel, then accepted the indigent defendant appointment. He prepared the contingent fee contract, signed it, and presented it to his client who was in jail. He was interviewed by the press and asked for comment on every facet of the controversy.

Although we recognize Myron Steere's representation of Nellie Schoonover may have constituted a more active visible role in a public controversy than the role of the petitioner/attorney in *Gertz v. Robert Welch, Inc.,* we do not believe Steere "thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." *Gertz v. Robert Welch, Inc.,* 418 U.S. at 352. We are mindful of the case of *Bandelin v. Pietsch,* 98 Idaho 337, 563 P.2d 395 (1977), *cert. denied* 434 U.S. 891 (1977), which presents a remarkably similar situation to the present case. There, the attorney was held to be a public figure by virtue of being "a pivotal figure in the controversy regarding the accounting of the estate that gave rise to the defamation and invasion of privacy actions." *Bandelin v. Pietsch,* 98 Idaho at 340. We hesitate to expand the classification of public figure to that extent. We hold an attorney who actively represents a client does not become a public figure for limited purposes without additional evidence of an attempt to gain public attention to influence the outcome of the controversy. We hold therefore, Myron Steere was not a public figure for a limited purpose.

The classification of appellant as a public figure for general purposes changes his burden from that of proving simple negligence to proving actual malice. *New York Times Co. v. Sullivan,* 376 U.S. at 279-280. The radio broadcasts and the news reports made by appellees were covered by a limited privilege.

An examination of the record reveals all of the relevant facts are before the court by virtue of the depositions, interrogatories, admissions and exhibits to the pleadings. Is there evidence of malice? In *New York Times Co. v. Sullivan,* the Supreme Court defined "actual malice" as "knowledge that [the news report] was false or . . . reckless disregard of whether it was false or not." p. 280.

Even if it is assumed the AP reports were proven false, there is no evidence the reporters knew of the falsity. Appellant concedes a majority of the reports were true. We find the two statements regarding the "conduct of the defense" and the fact he "required" Mrs. Schoonover to sign the fee agreement are substantially true. Steere's censure arose out of his defense of Nellie Schoonover and whether he required her to sign the contingent fee contract or had her sign it or let her sign it, is of no consequence. Appellant was the lawyer. It was his duty to know the law and the possible ethical violation. He was responsible for the contract, not Nellie Schoonover. He drafted the instrument, had it typed and took it to the jail for Mrs. Schoonover to sign. Under the circumstances, the use of the word "required" is not out of line. We hold as a matter of law the published statements are substantially true and no actual malice is shown.

Certain general rules are applicable. Summary judgment should not be entered if there remain genuine issues of material fact. In considering a motion for summary judgment, a trial court must give to the party against whom judgment is sought the benefit of all inferences which may be drawn from the admitted facts under consideration. *Welch v. Young,* 225 Kan. 189, 589 P.2d 567 (1979); *Bowen v. Westerhaus,* 224 Kan. 42, 578 P.2d 1102 (1978).

We note The Kansas City Star Co. and The World Co. have charged, as it relates to their companies, that this appeal was taken frivolously and for the purpose of harassment. They request that we assess their costs and attorneys' fees against the appellant. We find this contention to be without merit and we decline to assess the requested fees against appellant.

We have carefully considered all of appellant's issues of error and find no issue of material fact remaining. The motions for summary judgment were properly sustained by the trial court.

The judgment of the trial court is affirmed.

FROMME, J., not participating.

HOLMES, J., concurring in part and dissenting in part:

I concur with the majority in the decision affirming the judgment of the trial court for the reason that, in my opinion, the statements published about appellant were substantially true and correct. I also concur with most of what is said in the majority

opinion. However, I respectfully dissent from that portion of the opinion which finds that Steere was a "public figure for all purposes" by reason of his long career in the private practice of law in Franklin County and his involvement in local community, civic and social activities. In my opinion such activities are not of such nature as to automatically make a participant a "public figure for all purposes."

PRAGER, J., joins in the foregoing concurring and dissenting opinion.

SCHROEDER, C.J., dissenting: In my opinion, Myron S. Steere was not a public figure on the facts presented to this court for review. He was acting as an officer of the court in his capacity as Mrs. Schoonover's *court appointed attorney.* His position with respect to the public was not one of "persuasive power and influence," nor was he "intimately involved in the resolution of important public questions." His past participation as a member of the legal profession in his local community is no greater than that of many of his colleagues in the profession. This cannot be translated by fiction to say he acquired "fame."

Among other statements in the record the news media published that Myron S. Steere was publicly censured for "the conduct of the defense" of Mrs. Schoonover. This is *false.*

It is respectfully submitted the judgment of the lower court should be reversed and the case remanded for trial under legal theory upheld in *Gobin v. Globe Publishing Co.,* 216 Kan. 223, 531 P.2d 76 (1975).

MILLER, J., dissenting: I disagree with the conclusion reached by the majority, and therefore, I respectfully dissent.

The majority opinion reaches three conclusions. The first two are that Mr. Steere is not *a public official,* and that Mr. Steere is not *a public figure for limited purposes, i.e.,* the reporting of the Schoonover case and Mr. Steere's subsequent censure by this court. All of the justices of this court join in and agree with those conclusions.

The third, and the rationale for the affirmance of the judgment below, is the majority's conclusion that Mr. Steere is *a public figure for all purposes.* The trial court found that he was a public figure for all purposes because of the extent of his activity in the

city of Ottawa and in Franklin County. The majority finds him a public figure for all purposes for similar reasons: because he served as Franklin County attorney for several years; because he was once engaged as special counsel for the Franklin County Board of County Commissioners in a controversial dispute; and because he led an active social and professional life in Ottawa for many years.

Under this rationale, hundreds, if not thousands, of Kansans are public figures for all purposes. A physician who has practiced his profession in a small community for many years, who has perhaps served as a deputy coroner, and who has been active in social, professional and community affairs, is a public figure for all purposes—though he may be unknown outside the county of his residence. Likewise, a certified public accountant, a banker, a stockbroker, or a realtor, who has practiced his profession in the same city for many years, who somewhere along the line has held a municipal office, and who is socially and professionally active on the local level, is now a public figure for all purposes. I cannot agree.

Who, then, is a public figure? We find the following definitional statements in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L.Ed.2d 789, 94 S.Ct. 2997 (1974):

"Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . . . (p. 342.)

. . . .

"Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. . . .

"[A] private individual . . . [is one who] has not accepted public office or assumed an 'influential role in ordering society.' (p. 345.)

. . . .

"That designation [a public figure] may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions." (p. 351.)

The courts have held only a few persons to be public figures for all purposes. These include: Johnny Carson, the nationally known entertainer and host of the "Tonight Show," and his wife, *Carson v. Allied News Co.,* 529 F.2d 206 (7th Cir. 1976); the natural children of Julius and Ethel Rosenberg, *Meeropol v. Nizer,* 560 F.2d 1061 (2d Cir. 1977), *cert. denied* 434 U.S. 1013 (1978); Wally Butts, athletic director and former head football coach of the University of Georgia, and possibly General Edwin A. Walker, retired, *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 18 L.Ed.2d 1094, 87 S.Ct. 1975 (1967). As late as June of this year, the United States Supreme Court indicated that only a "small group" of individuals are public figures for all purposes. *Wolston v. Reader's Digest Assn., Inc.,* _____ U.S. _____ , 61 L.Ed.2d 450, 458, 99 S.Ct. 2701 (1979).

To include Mr. Steere, well known though he may be in his home community, in the same classification as the Johnny Carsons and those whose names are subject to instant recognition by millions, seems absurd. He does not possess great "power and influence"; he does not have "pervasive fame or notoriety"; and he has not assumed a role of "especial prominence in the affairs of society." The result, in my judgment, is to lower the standards of news media reporting as to a multitude of Kansas business and professional people; to deprive those people of the rights and protection which should be their due; and to expand the "small group" envisioned by the United States Supreme Court into an assemblage of vast proportions. I would reverse the judgment and remand for trial.

SCHROEDER, C.J., joins in the foregoing dissenting opinion.