(610 P.2d 645)

No. 50,900

Randolph M. Every, *Appellant,* v. Jefferson Insurance Company of New York and American Family Mutual Insurance Company, *Appellees.*

Opinion filed May 9, 1980.

*Robert V. Wells,* of Kansas City, for appellant.

*Jerome V. Bales,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, and *Kenneth J. Reilly,* of Boddington and Brown, of Kansas City, for appellees.

Before Abbott, P.J., Spencer and Parks, JJ.

Abbott, J.: This is an appeal in a personal injury accident arising out of a multi-vehicle collision from an order sustaining defendants' motions for summary judgment and entry of judgment pursuant to K.S.A. 60-254(*b*).

The accident in question occurred on Metcalf Avenue in Overland Park. Metcalf is a four-lane highway (two lanes north, two lanes south) and is divided at the site of the accident by a solid double yellow line. The four vehicles involved were all traveling in the center, northbound lane at the time of the accident. All witnesses described the traffic as heavy that morning.

Plaintiff was operating a motorcycle. Directly in front of him was a car driven by defendant Gray who is not involved in this appeal. In front of Gray's car was a vehicle operated by Dick Peugeot who was not named as a defendant in the lower court and is not a party to this appeal. In front of Peugeot's car was another vehicle which has never been identified and which will be referred to as the uninsured motorist. Basically stated, the accident occurred when the uninsured motorist stopped and made a left turn across the southbound lanes into a bank driveway

located on the west side of Metcalf. Peugeot had stopped behind the uninsured motorist and had started forward when he was struck from the rear by Gray's vehicle. Plaintiff was unable to stop his motorcycle and, in turn, collided with Gray's vehicle, sustaining serious injury. None of the vehicles came into contact with the uninsured motorist. Plaintiff filed suit against the two insurance companies that provided him with uninsured motorist coverage and against the defendant Gray. The action against Gray is still pending in the district court.

The two insurance companies moved for summary judgment on the basis that: (1) the uninsured motorist provisions of the respective policies did not extend to provide coverage in the instant case since the policies required contact between the insured's motor vehicle and the uninsured motorist's vehicle and it was stipulated that no such contact occurred; and (2) as a matter of law, the documents, depositions and pleadings on file conclusively showed that the uninsured motorist was not negligent in any respect.

The trial court sustained the motions on both grounds. On appeal, plaintiff contends the court erred in both respects. As to the "physical contact" provision issue, plaintiff correctly argues that in view of a decision handed down by the Supreme Court after the trial court's decision the physical contact provision of the insurance policies is void and unenforceable. *Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 515, 592 P.2d 445 (1979). Defendants concede *Simpson* is controlling, but maintain that the judgment should be upheld on the basis that the trial court properly entered summary judgment in that plaintiff failed to establish a prima facie case of negligence on the part of the uninsured motorist.

The rules governing summary judgment are well-established. Summary judgment is authorized if the pleadings, depositions, answers to interrogatories and affidavits, if any, show that no genuine issue of material fact remains, and a party is entitled to judgment as a matter of law. *Nordstrom v. Miller,* 227 Kan. 59, Syl. ¶ 3, 605 P.2d 545 (1980). In considering a motion for summary judgment, a trial court must give to the party against whom judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. *Steere v. Cupp,* 226 Kan. 566, 575, 602 P.2d 1267 (1979). Although plain-

tiff's pleadings in this case are to be given a liberal construction (*Citizens State Bank v. Gilmore,* 226 Kan. 662, 664, 603 P.2d 605 [1979]), allegations made in the pleadings and briefs will not sustain a genuine issue of fact when opposed by uncontradicted affidavits or depositions supporting a motion for summary judgment. *Farmers Ins. Co. v. Schiller,* 226 Kan. 155, 158, 597 P.2d 238 (1979). An appellate court will read the record in the light most favorable to the party who defended against the motion for summary judgment. *Fredricks v. Foltz,* 225 Kan. 663, 666, 594 P.2d 665 (1979). Normally, the presence or absence of negligence in any degree is not subject to determination by the court on summary judgment, for such determination should be left to the trier of facts. It is only when it can be said that reasonable men cannot reach differing conclusions from the same evidence that the issue may be decided as a question of law. *Welch v. Young,* 225 Kan. 189, 192, 589 P.2d 567 (1979); *Pedi Bares, Inc. v. First National Bank,* 223 Kan. 477, Syl. ¶ 3, 575 P.2d 507 (1978).

Depositions were taken of plaintiff, Peugeot and Gray. Plaintiff did not see the uninsured motorist; he admitted that his pleadings were based on statements made to him by others after the accident. Gray did observe the uninsured vehicle prior to impact. She, however, could not say whether the uninsured vehicle had its brake lights or its turn signals on; neither could she say whether it was stopped or only slightly moving when she first noticed it, nor was she aware of the manner in which the uninsured motorist came to a stop or near stop. She did see it complete its left turn into a bank driveway after impact. Peugeot testified the uninsured motorist came to a "normal" stop before making the left turn and that the uninsured motorist was not involved in the accident in any way. Peugeot testified he made a normal stop some six to eight feet behind the uninsured motorist and he did not have to brake hard in order to do so. Peugeot stated he did not specifically remember any turn signals, but "I knew the car was turning. So there must have been a signal." Peugeot indicated that he had no difficulty either in ascertaining the uninsured motorist's intent to stop and turn left or in stopping behind the uninsured motorist. Peugeot, according to his testimony, had stopped behind the uninsured motorist for at least a few seconds and possibly considerably longer before traffic cleared in the southbound lanes and the uninsured motorist started his left turn.

Peugeot apparently did not turn on his vehicle's blinkers and had taken his foot off the brake when the impact occurred, so his brake lights were not activated immediately prior to the collision. As the uninsured motorist began to turn, Peugeot's vehicle began to move forward and was struck from the rear by Gray's car. Peugeot's vehicle was knocked forward some sixty feet, but the uninsured vehicle was not involved as it had already moved out of the northbound lanes.

Plaintiff relied on seven acts of negligence on the part of the uninsured motorist that he placed in issue in the pretrial order: (1) improper stop, (2) improper and illegal turn under the conditions existing, (3) failure to signal the turn as required by law, (4) driving at an unsafe speed for the conditions then and there existing, (5) failure to obey traffic signal (yellow lines on street), (6) driving across a divided highway where prohibited, and (7) failure to signal for a stop as required by law.

As we construe plaintiff's allegations of negligence, they fall into four categories, and under our applicable scope of review the question before us is whether reasonable persons could reach different conclusions from the evidence presented to the trial judge.

### 1. Improper Stop

Summary judgment was proper as to plaintiff's allegation of improper stop. Peugeot's deposition unequivocally states that the uninsured motorist made a normal stop, and plaintiff failed to controvert that testimony either by appropriate deposition or by affidavit. If the uninsured motorist had a right to make a left turn at the place the left turn was made, then he had a right to stop and wait for traffic to clear before making the turn. The record contains no evidence from which a reasonable person could conclude that the uninsured motorist stopped in a negligent manner.

### 2. Failure to Signal

As to the uninsured motorist's failure to signal a turn or a stop, Peugeot's deposition indicates he does not specifically remember any signals but he knew that the car was turning and that it made a normal stop. His testimony cannot be construed to imply that the uninsured motorist did not signal either for a left turn or for a stop. Plaintiff did not see the uninsured motorist and Gray could not say whether the vehicle's turn signals, brake lights or any other lights were on. There is no evidence that the uninsured

motorist did not properly signal for a left turn or for a stop. Even assuming a violation of the signal statutes, it appears from the testimony that such a failure could not be a proximate cause of the accident.

### 3. Unsafe Speed

Plaintiff contends the uninsured motorist was negligent in driving at a slow rate of speed and stopping in the middle of a highway during rush hour traffic. K.S.A. 8-1548(*a*) provides:

"No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made *with reasonable safety,* nor without giving an appropriate signal in the manner hereinafter provided." (Emphasis added.)

Assuming that a left turn was proper, there is no evidence in the record indicating that the stop and turn were made in other than a normal and safe fashion.

### 4. Improper and Illegal Turn

All parties agree that two solid yellow lines separated the northbound and southbound lanes of traffic, and that the uninsured motorist crossed these lines in making a left turn into the bank driveway. A left turn over double yellow lines is permitted by K.S.A. 8-1514, 8-1519, 8-1520, and by virtue of section 3A-7 of the Manual on Uniform Traffic Control Devices for Streets and Highways. The legislature authorized the secretary of transportation to adopt a uniform system of traffic control devices and where applicable, as here, the regulations have the force and effect of law. *Waits v. St. Louis-San Francisco Rly. Co.,* 216 Kan. 160, Syl. ¶ 11, 531 P.2d 22 (1975).

Plaintiff contends the turn was illegal under K.S.A. 8-1524, which provides:

"Whenever any highway has been divided into two (2) or more roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so *construed* as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway unless directed or permitted to use another roadway by official traffic-control devices or police officers. *No vehicle shall be driven over, across or within any such dividing space, barrier or section, except through an opening in such physical barrier or dividing section or space or at a cross-over or intersection as established, unless specifically prohibited by public authority."* (Emphasis added.)

Of the two obvious errors in the statute, one deserves comment. The word "construed" is an error. It should read "constructed." The predecessor statute, G.S. 1961 Supp. 8-539a, used the word "constructed." The Uniform Vehicle Code Ann. § 11-311 (1967),

which is identical to K.S.A. 8-1524, used the word "constructed." K.S.A. 8-1524 became law by virtue of L. 1974, ch. 33, art. 15, which used the word "constructed." When volume 1, K.S.A., was reprinted in 1975, an error was made and "constructed" was inadvertently changed to "construed."

We do not view K.S.A. 8-1524 as urging a different result when it is considered with K.S.A. 8-1514, 8-1519, 8-1520 and section 3A-7 of the Uniform Traffic Manual. Legislative intent seems to be clear that a left turn into or from an alley, private road or driveway was contemplated and authorized by the legislature. The only reported case we have found considering a similar issue is *Boggus v. Miller,* 388 S.W.2d 240 (Tex. Civ. App. 1965). In that case, the State of Texas considered a statute nearly identical to K.S.A. 8-1524 (Tex. Civ. Code Ann. art. 6701d § 62 [Vernon]) and determined that it is negligence per se to turn left across double yellow stripes. That case is distinguishable in Kansas, as the Texas section on no-passing zones (§ 58[b]) differs from our no-passing zone statute (K.S.A. 8-1520) in that Texas permits left turns in a "no-passing zone marked by signs only" whereas the Kansas statute allows left turns in no-passing zones without qualification. While we do not consider it authority for our decision, or even persuasive, we do note that our holding in this case is consistent with the Kansas Driving Handbook issued by the State of Kansas to Kansas motorists, student drivers and other persons preparing for the driver's license examination.

The trial court did not err in entering summary judgment in favor of the two insurance companies.

Affirmed.