Allyson Christman, Legal Counsel Kansas Highway Patrol 122 SW Seventh Street Topeka, Kansas 66603-3847
Dear Ms. Christman:
You request our opinion on the issue of Kansas Highway Patrol officers holding dual commissions. You specifically note K.S.A. 74-2113(d) which states:
 "No member of the patrol shall hold any other elective or appointive commission or office, except in the Kansas national guard or in the organized reserve of the United States army, air force or navy. No member of the patrol shall accept any employment or compensation from any licensee of the director of alcoholic beverage control of the department of revenue or from any licensee of the Kansas racing commission or from any officer, director, member or employee of any such licensee, nor shall any member of the patrol accept any employment or compensation for services which require the use of any state-owned equipment provided by the Kansas highway patrol or the wearing of the patrol uniform. No member of the patrol shall accept any reward or gift except with the written permission of the superintendent."[1]
You note a 1994 informal opinion from Attorney General Stephan to the Kansas Highway Patrol Superintendent. In that letter, the Patrol was advised that the Attorney General did not find anything in this statute that clearly prohibited off-duty work as a deputy sheriff. You indicate that following this advice, there was a brief period of time during which the Kansas Highway Patrol (KHP) allowed some troopers to hold second jobs in law enforcement. However, you also note that since 1999, the agency has not allowed such situations. Rather, based upon K.S.A. 74-2113 and concerns about liability, the KHP does not authorize troopers to engage in secondary law enforcement jobs. Troopers who have a second non-law enforcement job are put on notice that none of KHP's equipment is to be used and that KHP will not accept liability or responsibility for any actions taken during the secondary employment. Your request for our opinion now is prompted by fiscal difficulties. Troopers would more than ever like to utilize transferrable skills and accept part time jobs working for other law enforcement entities, thus supplementing their income. While KHP does not wish to restrict viable secondary income, you believe that allowing troopers to work for other employers who require that they carry a gun violates K.S.A. 74-2113(d) and presents liability concerns.
It is clear from the emphasized language that KHP troopers may not "accept any employment or compensation for services which require the use of any state-owned equipment." Thus, the KHP policy with regard to use of state property for another employer is not only permitted, it is required. KHP troopers may not accept a second job that requires the use of state property such as KHP issued guns, uniforms, or vehicles. Use of state property for such purposes clearly violates the provisions of K.S.A. 74-2113(d).
The issue of whether this statute completely prohibits secondary employment by another law enforcement entity is not so clear. In order to read K.S.A. 74-2113(d) as prohibiting secondary employment by another law enforcement entity, it is necessary that such employment result in the trooper accepting "an appointive commission or office." We have not found any Kansas case law that specifically applies K.S.A. 74-2113 to allow or disallow a trooper from holding a second law enforcement position.[2]
We have, however, located two prior letter opinions from this office on this topic, both of which concluded that the Superintendent could adopt a regulation to address this type of situation.[3] The 1994 letter concluded that the provisions of K.S.A. 74-2113(d) did not prohibit a trooper from accepting secondary employment.[4]
The original version of K.S.A. 74-2113 was adopted in 1937.[5] Until 1991, the phrase in question included additional language prohibiting troopers from "accept[ing] any other employment while he is a member of the patrol." This remained in place until the 1991 amendment to K.S.A.74-2113[6] removing this prohibition from the statute. Thus, the issue becomes whether the remaining language in the statute, relative to appointive commissions or offices, was intended to apply to the specific type of secondary employment giving rise to your opinion request.
"The prohibition against one person holding more than one office at the same time has references to offices, as distinguished from positions in the public service that do not rise to the dignity of office. It does not extend to a position which is a mere agency or employment. . . ."[7]
The common law doctrine of incompatibility of offices provides that one individual may not simultaneously hold two public offices where the functions of the two offices concerned are inherently inconsistent, as where there are conflicting interests or where the nature and duties of the two offices are such as to render it improper, from considerations of public policy, for one person to retain both. The Kansas Supreme Court acknowledged that "the authorities are not in complete harmony in defining the term `public office,' or `public officer,' [but that] it universally has been held that the right to exercise some definite portion of sovereign power constitutes an indispensable attribute of `public office.'"[8]
The distinction between a governmental employee and a public official is significant. Characteristics of a "public officer," in contrast to those of a "public employee," include:
• The creation of the person's position by either a state constitution or statutes as well as the prescription of his or her duties and powers by statute, rather than by contract;
• • a requirement of law that such person be elected or appointed;
• • the designation or title given the person by law_.[9]
"Public officers are generally appointed to serve for a specified time,_ the duration or term of employment being fixed by statute. They frequently take or are required to take an oath of office, and are vested with supervisory and discretionary authority, which entails exercising some portion of sovereign power to carry out their duties._ Importance, dignity, and independence of office have been adopted by some courts as relevant factors in the determination of public officer status. Other criteria considered by the courts in determining whether a person is a public officer, rather than an employee of a political subdivision, are whether the public servant is under the direct control and supervision of an employer; whether he or she makes important policy decisions; and whether he or she has to meet certain qualifications prescribed by law. If the office occupied involves a large degree of independence in which the individual is not under the direct supervision and control of an employer, then the individual is a public officer. Even so, subordination to a superior does not necessarily render a subordinate a nonofficial."[10]
While it is clear that both highway patrol troopers and deputy sheriffs are vested with some degree of sovereign governmental power exercised for the benefit of the public, they do not perform their duties without supervision. They are under the control of a superior. While troopers and deputy sheriffs are officers of the law, it cannot be said they hold a public office in the strictest sense. Rather, they are public employees who are hired and commissioned to enforce the law. However, the provisions of K.S.A. 74-2113(d) allow an exception for appointments or commissions in the armed services and National Guard. This could be construed as a recognition that such service would otherwise be prohibited by this statute. Moreover, persons passing the required law enforcement training are generally considered to have received a "commission,"[11] and use of the word "other" in K.S.A. 74-2113(d) clearly demonstrates the Legislature's belief that the position of Highway Patrol troopers is itself an appointive commission or office.
It appears to us that the 1937 authors of K.S.A. 74-2113(d) intended to prevent dual office holding or incompatibility situations, wherein a trooper might find himself faced with serving two masters whose interests might conflict. We must also consider the 1991 amendment eliminating "other employment" from K.S.A. 74-2113(d) while leaving untouched the remaining prohibitive language and keeping the exception allowing service in the National Guard or other named branches of service.
If serving in the National Guard or other armed services needed an exception because it is otherwise considered holding a commission or office, and if being a trooper constitutes holding a commission or office, it is difficult to distinguish that type of position from a deputy sheriff or city police officer.
Finally, we note that KHP has traditionally read the statute in question to preclude second employment by another law enforcement agency. Courts give deference to an agency's interpretation of its own regulation and an agency's interpretation of its own regulation will not be disturbed unless the interpretation is clearly erroneous or inconsistent with the regulation.[12] Interpretation of a statute by an administrative agency charged with the responsibility of enforcing the statute is entitled to judicial deference under the "doctrine of operative construction," and deference to an agency's interpretation is particularly appropriate when the agency is one of special competence and experience.[13]
Thus, given the legislative history of the statute, the prohibitive language of the statute, and the long practice of the Kansas Highway Patrol banning troopers from accepting secondary jobs in other law enforcement, it is our opinion that while K.S.A. 74-2113(d) does permit certain secondary employment, it prohibits a Kansas Highway Patrol trooper from holding a second law enforcement position.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
PK:JLM:TMN:jm
[1] Emphasis added.
[2] Prior Attorney General Opinions dealt with a subsection of K.S.A.74-2113, which was later deleted, that restricted certain political activities. See Attorney General Opinions No. 93-63, 93-33, 90-111, and 84-40.
[3] K.S.A. 74-2107 authorizes regulations.
[4] August 24, 1990 letter from Attorney General Robert T. Stephan to Representative Michael Peterson, and February 15, 1994 informal opinion from Assistant Attorney General Mary Jane Stattleman to Superintendent Lonnie McCollum.
[5] L. 1937, Ch. 330, § 1.
[6] L. 1991, Ch. 234, § 1.
[7] 63 Am.Jur.2d Public Officers and Employees, § 69 (1984).
[8] Sowers v. Wells, 150 Kan. 630, 633 (1939).
[9] 63 Am.Jur.2d Public Officers and Employees, §§ 1-41 (1984).
[10] Id.
[11] See K.S.A. 74-5606.
[12] Winston v. SRS, _____ Kan. ______, 49 P.3d 1274 (2002).
[13] CPI Qualified Plan Consultants, Inc. v. Ks. Dpt. Of HumanResources, _____ Kan. _____, 38 P.3d 666 (2002).