No. 59,878

Arnold L. Ruebke, Jr., *Appellant,* v. Globe Communications Corporation, d/b/a Startling Detective Magazine, *Appellee.*

(738 P.2d 1246)

596

Opinion filed June 12, 1987.

*Richard J. Rome,* of Hutchinson, argued the cause and was on the brief for appellant.

*Paul M. Levy,* of Deutsch, Levy & Engel, Chtd., of Chicago, Illinois, argued the cause, and *Scott J. Gunderson,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The plaintiff, Arnold Ruebke, Jr., contends that the defendant libeled him in a March 1985 magazine article. The Reno County District Court granted the defendant's motion for summary judgment. The plaintiff appeals.

Appellee, Globe Communications Corporation (Globe), publishes a crime magazine, Startling Detective, sold throughout the United States on a bi-monthly basis. In March 1985, Arnold Ruebke, Jr., was being tried for three counts of first-degree murder and three counts of aggravated kidnapping in the district court of Reno County, Kansas. On March 8, 1985, after Ruebke's preliminary examination, Globe distributed its May 1985 issue of Startling Detective, which included a feature story entitled "Killer Who Came Straight From Hell," with an overline stating, "Kansas Has Another 'In Cold Blood' Case." The article recited the events surrounding the October 29, 1984, kidnapping and murder of two-year-old twins, James and Andrew Vogelsang, and their babysitter, Tammey Mooney. The article detailed the investigation of the murder; the manner in which Ruebke was determined to be the prime suspect; and how Ruebke turned himself in to the police seeking protective custody, was then arrested, and eventually charged. The final paragraph of the article stated:

"By law, until such time as he may be judged at a fair trial, Arnold Leroy Ruebke must be considered to be innocent of the charges that have been placed against him."

The story was written by an independent contractor or "stringer," Jack F. Heise, using the pen name "Larry Mauro." Since 1970, Heise had supplied the magazine with over 800

articles. Facts for the story were gathered from numerous newspaper reports appearing in The Hutchinson News, other Kansas newspapers, and wire service stories reported by United Press International and Associated Press.

On March 12, 1985, Ruebke filed a libel action against Globe based on publication of the article. In his complaint Ruebke alleged that the article was false and defamatory and written to convict him prior to his trial. On January 27, 1986, Globe filed a motion for summary judgment. Ruebke was convicted on all counts on June 6, 1985. On June 4, 1986, the district court adopted defendant's statement of uncontroverted facts due to plaintiff's failure to comply with Supreme Court Rule 141 (235 Kan. cx) and granted summary judgment to defendant, finding that (1) since Ruebke was convicted on June 6, 1985, of all crimes referred to in the article, the statements were true and an absolute defense, and (2) even if the statements were not true, Ruebke, a limited public figure, had failed to prove malice on the part of defendant, and (3) plaintiff had failed to allege damage to his reputation. Arnold Ruebke, Jr.'s criminal conviction was affirmed by this court in January of 1987. *State v. Ruebke,* 240 Kan. 493, 731 P.2d 842 (1987).

The sole issue raised on appeal is whether the trial court erred in granting summary judgment and in its findings of fact and conclusions of law. Initially Ruebke claims that the trial court erred in adopting Globe's argument that the subsequent finding of guilty for the murders rendered him "libel proof" and thus incapable of claiming injury to reputation. In support of this argument, Globe relied on several cases where courts held criminal defendants to be "libel proof." *Wynberg v. National Enquirer, Inc.,* 564 F. Supp. 924 (C.D. Cal. 1982); *Logan v. District of Columbia,* 447 F. Supp. 1328 (D.D.C. 1978); and *Ray v. Time, Inc.,* 452 F. Supp. 618 (W.D. Tenn. 1976), *aff'd* 582 F.2d 1280 (6th Cir. 1978).

These libel cases are inapposite. In each of these cases, the plaintiff had already suffered from a lowered reputation in the community because of the plaintiff's *prior* convictions for the crime alleged in the publication or for a similar crime. Under such circumstances, the truth of a defamatory publication is determined at the time of its publication. In other circumstances,

facts alleged to exist by the defamer may subsequently occur, but his foresight in anticipating them will not protect him from liability. Restatement (Second) of Torts § 581A, comment g (1976).

Ruebke further claims that the trial court erred in holding that a conviction subsequent to the alleged defamatory publication provides the defense of truth to the publisher. He argues that just as the damages to one's reputation must be determined at the time of the publication, so must the truth of the publication be determined. He further contends that the jury's determination of his guilt in the criminal case is not binding on the jury in this action because he had appealed his criminal conviction; therefore, the determination of his guilt was not final when the district judge granted summary judgment in the civil case. We disagree.

The Constitution of the State of Kansas provides protection for a free press. The liberty of the press shall be inviolate; and all persons may freely speak, write, or publish their sentiments on all subjects, being responsible for the abuse of such rights; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury; and if it shall appear that the alleged libelous matter was published for justifiable ends and is truthful, the accused party shall be acquitted. Kan. Const. Bill of Rights § 11. For there to be liability for defamation, there must be a publication of a matter that is both defamatory and false. In civil actions for libel where the defendant establishes the truth of the matter charged as defamatory, the defendant is justified in law, and exempt from all civil responsibility. *Castle v. Houston*, 19 Kan. 417, Syl. ¶ 2 (1877). Where the published statements are substantially true, there is no liability and a motion for summary judgment is proper.

In the criminal case, Arnold Ruebke was convicted of the triple murder by a jury of his peers. On appeal, this court determined that pretrial publicity had not prejudiced the community to the extent that he could not receive a fair trial. We reviewed each publication submitted by Ruebke's attorney, including the story published in Startling Detective. We examined each of Ruebke's claims that he was denied a fair trial and found them to be without merit. Under the law, Ruebke had been

found guilty of the triple murder. All allegations that he had committed the crimes were found to be true.

However, rather than relying solely on the truth of the criminal convictions for our decision, we will also address the other grounds for the district judge's decision.

To succeed in a libel action, an individual who is not a public official or a public figure need only prove that the defamation was negligently published. *Gobin v. Globe Publishing Co.*, 216 Kan. 223, 231-32, 531 P.2d 76 (1975). To insure freedom of the press and speech, the development of American law has afforded public figures less protection than non-public figures. A limited privilege is granted to those with a special interest or a duty in the subject matter of communication. The press, which includes magazines and newspapers, is granted this limited privilege. The trial court determined that, even if some of the statements in the article were false, if Ruebke was a limited-purpose public figure, he had failed to prove malice and injury to reputation. We agree.

In a libel action, *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964), 95 A.L.R.2d 1412, the United States Supreme Court recognized that the constitutional protection of freedom of speech and press affords a qualified privilege of honest mistake. The Court held that First Amendment guarantees mandated that libel plaintiffs who were "public officials" could not recover absent a showing of actual malice through proof of convincing clarity. Prior to the *New York Times* case, Kansas in 1908 chose to follow a small minority of the states and recognized that published discussions of a candidate's qualifications were conditionally privileged. The public benefit from publicity was so great, and the chance of injury to private character so small, that such discussion was privileged. To defeat a qualified privilege there had to be a showing of malice—actual evil-mindedness was necessary. Under the First Amendment's guaranty of freedom of speech, the burden of proving malice was placed on the one claiming that his reputation was injured, and no presumptions were allowed. *Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281 (1908). *Coleman* was cited by the United States Supreme Court in *New York Times*. This standard was extended to "public figures" in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967).

Who is a "public figure" and whether there is a qualified privilege based on the status of the individual are questions of law. The nature and extent of an individual's participation in the particular controversy giving rise to the defamation determines if an individual is a "public figure." *Hanrahan v. Horn*, 232 Kan. 531, 533, 657 P.2d 561 (1983).

There are two types of public figures:

(1) All-Purpose Public Figures—Those persons who occupy positions in society (not only in government) of "persuasive power and influence" or achieve pervasive fame and notoriety.

(2) Limited-Purpose Public Figures—Those who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. *Steere v. Cupp*, 226 Kan. 566, 572, 602 P.2d 1267 (1979).

In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case, such persons assume special prominence in the resolution of public questions. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

Ruebke argues that since he did not voluntarily thrust himself into the forefront of a particular controversy, he was not a limited public figure. We disagree. Individuals who do not seek publicity or consent to it, but through their own conduct or otherwise become a subject of public interest, may become limited public figures. Those who commit crime or are accused of it may wish to avoid publicity, but are nevertheless persons of public interest, concerning whom the public is entitled to be informed. Restatement (Second) of Torts § 652D, comment f (1976).

While Kansas courts have not considered the issue of the criminal defendant's status as a limited public figure, we adopt the reasoning of the U.S. Supreme Court in *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157, 61 L. Ed. 2d 450, 99 S. Ct. 2701 (1979). There, the court held that a person who engages in criminal conduct does not automatically become a "public figure." The public figure status of a criminal defendant who is the subject of the alleged defamation in a libel case is to be deter-

mined no differently than in any other libel case; namely, by focusing on the "nature and extent of an individual's participation in the controversy giving rise to the [alleged] defamation." 443 U.S. at 167 (citing *Gertz*). Cases in which persons connected with crimes have been classified as public figures by their voluntary actions include *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d 1072 (3d Cir. 1985); *Logan v. District of Columbia*, 447 F. Supp. 1328; and *Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440 (S.D. Ga. 1976), *aff'd* 580 F. 2d 859 (5th Cir. 1978).

Following the criteria set by *Gertz*, the proper inquiry to determine if an individual charged with a crime has obtained the status of a limited public figure is (1) whether the crime committed is a "public controversy" and (2) whether the nature and extent of defendant's participation in the controversy was enough to cause him to become a "public figure." Crimes where a public figure is the victim or which are of a particularly heinous nature are public controversies and automatically become matters of great concern to the public. Here, public concern for the victims and the method in which the crimes were committed was manifested by the establishment of reward funds by the citizens of Arlington, Hutchinson, and Reno County as well as a $5,000 additional state reward offered by Governor John Carlin.

With regard to the nature and extent of Ruebke's participation in the controversy, several factors stand out:
- (1) the intense media coverage of the murder investigation and its eventual focus on Ruebke;
- (2) Ruebke's voluntary act of turning himself in to the police in Kingman, Kansas, seeking protective custody; and
- (3) Ruebke's arrest and indictment for the triple murders.

Although no one factor standing alone could convey public figure status upon a criminal defendant, when all relevant factors are considered as a whole, they are sufficient to do so. See *Marcone v. Penthouse Intern. Magazine for Men*, 754 F.2d at 1086. An individual may not choose whether or not to be a public figure. Public figure status is rather the result of acts or events which by their nature are bound to invite comment. The triple murder was by nature an event of great concern to the public. The resulting investigation thrust Ruebke into the forefront of

public attention. Thus, the district court was correct in holding that Ruebke was a limited public figure.

The district court was also correct in determining that Ruebke had failed to prove malice. We must first review that standard for determining the existence of malice at the summary judgment stage.

To provide added protection to the press from libel suits, the United States Supreme Court recently changed the direction of summary judgment under the federal rules. In a libel action brought by a "public figure," that individual is required under the First Amendment to prove by clear and convincing evidence that the defendant acted with "actual malice, a knowing or reckless disregard of the truth." That the clear and convincing standard of proof of malice applies at the summary judgment stage was decided in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The court stated:

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. . . . [W]here the First Amendment mandates a 'clear and convincing' standard, the trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude, for example, that the plaintiff had shown actual malice with convincing clarity." 477 U.S. at 252.

Under the Kansas Rules of Civil Procedure, summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. *Barnhart v. McKinney,* 235 Kan. 511, 682 P.2d 112 (1984).

An appellate court is required to read the record in the light most favorable to the party against whom summary judgment was entered. The appellate court takes the party's allegations as true, and it gives him the benefit of the doubt when his assertions conflict with those of the movant. Factual inferences tending to show triable issues are to be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will be denied. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed.

Ruebke initially contends that the district judge abused his discretion by holding that, since Ruebke failed to comply with Supreme Court Rule 141(b) (235 Kan. cx), Ruebke's response must be stricken and Globe's statement of uncontroverted facts deemed admitted. He argues that the district judge compounded his error by then determining as a matter of law Globe's motion for summary judgment should be granted. Ruebke claims that summary judgment was improper because he had substantially complied with the rule and because there were genuine issues of material fact.

Supreme Court Rule 141 provides:

"No motion for summary judgment shall be heard or deemed finally submitted for decision until:

"(a) The moving party has filed with the court and served on opposing counsel a memorandum or brief setting forth concisely in separately numbered paragraphs the uncontroverted contentions of fact relied upon by said movant (with precise references to pages, lines and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents contained in the court file and otherwise included in the record); and

"(b) Any party opposing said motion has filed and served on the moving party within twenty-one (21) days thereafter, unless the time is extended by court order, a memorandum or brief setting forth in separately numbered paragraphs (corresponding to the numbered paragraphs of movant's memorandum or brief) a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence, and any additional genuine issues of material fact which preclude summary judgment (with precise references as required in paragraph [a], *supra*).

"The motion may be deemed submitted by order of the court upon expiration of twenty-one (21) days, or expiration of the court ordered extended period, after filing and service on opposing counsel of the brief or memorandum of moving party notwithstanding the failure of the opposing party to comply with paragraph (b), *supra*. In such cases the opposing party shall be deemed to have admitted the uncontroverted contentions of fact set forth in the memorandum or brief of moving party. In determining a motion for summary judgment the judge shall state the controlling facts and the legal principles controlling the decision in accordance with Rule No. 165."

While conceding noncompliance with Supreme Court Rule 141(b), Ruebke argues that the district court's application of the rule was unduly harsh and an abuse of discretion. Globe contends that literal compliance with Rule 141 is mandatory, citing *McCullough v. Bethany Med. Center*, 235 Kan. 732, 683 P.2d 1258 (1984).

In *McCullough*, the movant for summary judgment did not comply with Rule 141(a) and did not set out the uncontroverted facts concisely in separately numbered paragraphs. The district court ruled that defendant's memorandum had substantially complied with Rule 141. We reversed, finding under the circumstances the district court's grant of summary judgment had left no way for an appellate court to determine then or now what facts were or were not controverted or on what evidence the parties relied. This case, however, does not deal with subsection (a) of Rule 141, but rather with subsection (b). We are not considering the movant's failure to comply with Rule 141(a), but rather with the opposing party's failure to set forth in separately numbered paragraphs the manner in which the movant's facts are controverted in the response.

Ruebke's attorney, rather than making "precise reference to pages, lines and/or paragraphs of the transcripts" in his response, merely referred to the entire trial transcript of the criminal case when listing some of the 19 additional controverted facts. In this case, Ruebke's failure to comply with subsection (b) of Supreme Court Rule 141 thus also makes it almost impossible for the district court or an appellate court to determine where the additional factual contentions are located in the criminal trial record.

Rule 141 further directs that where the party opposing summary judgment fails to comply with (b), the district court *may* deem the motion for summary judgment submitted and the opposing party as having admitted the uncontroverted facts set forth in the movant's statement. Thus, the rule vests discretion in the trial court whose sound discretion will not be disturbed on appeal without a clear showing of abuse. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion. *Hagedorn v. Stormont-Vail Regional Med. Center*, 238 Kan. 691, Syl. ¶¶ 1, 2, 715 P.2d 2 (1986).

Ruebke has made no showing which supports a finding that the trial court's decision to disregard Ruebke's statement of

additional facts was an abuse of discretion. Ruebke's additional list of controverted facts does not raise any genuine issue of material fact. Many of the additional facts are merely complaints by Ruebke about the quality and the sensational nature of the other articles and the advertisements contained in the Startling Detective magazine. For example, Ruebke resents that the publication advertises good luck charms, ESP, health and healing powers, the power of witchcraft, gun sales, lucky stones, a sex encyclopedia, Satan power, a lonely hearts exchange section, sex toys, a "Miraculous Fatima Medal" promising cures and thousands of dollars for only $5.00, and sexual pleasures.

In other statements of his additional facts, Ruebke complains that the author of the allegedly libelous article, by paraphrasing, has sensationalized some of the statements made by witnesses during the investigation and the preliminary examination. Ruebke also points out that some of the statements in the article about the triple murder are not factually correct because the author incorrectly stated some of the dates and times of certain occurrences.

Ruebke's claims do not raise any genuine issues of material fact. In order to preclude summary judgment, the facts subject to dispute must be material to the conclusive issues in the case. An issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact. *Busch v. City of Augusta*, 9 Kan. App. 2d 119, Syl. ¶¶ 4, 5, 674 P.2d 1054 (1983).

A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. *Gleichenhaus v. Carlyle*, 226 Kan. 167, 597 P.2d 611 (1979); *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978). The existence of malice is ordinarily a question of fact for the jury, but where the facts are not in dispute, it is a question of law for the court. *Redmond v. Sun Publishing Co.*, 239 Kan. 30, 36, 716 P.2d 168 (1986); *Gleichenhaus v. Carlyle*, 226 Kan. at 169. Summary judgment should be employed with caution in a defamation case.

However, summary judgment may be granted when the evidence shows no liability as a matter of law and where the essential facts are not in dispute. *Hein v. Lacy*, 228 Kan. 249, 256, 616 P.2d 277 (1980).

Though the article contained statements with minor inaccuracies, the record on appeal does not show that Globe acted with malice or that any genuine issue of material fact existed. Thus, the district court was correct in granting summary judgment to defendant.

Affirmed.