No. 65,303

PLUMMER DEVELOPMENT, INC., *Appellant*, v. PRAIRIE STATE BANK, *Appellee*.

(809 P.2d 1216)

Opinion filed April 15, 1991.

*William L. Fry,* of Fry, White, Birch & Reeves, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Michael G. Coash,* of Bond, Bond & Coash, of El Dorado, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Plummer Development, Inc., (PDI) appeals from the trial court's grant of summary judgment in favor of Prairie State Bank (Bank). PDI's suit against the Bank alleged wrongful setoff of its bank account. It also alleged conversion and bad faith and requested actual and punitive damages.

PDI raises four issues on appeal, two of which contend that factual issues remain and thus summary judgment was premature.

PDI also raises an argument that does not appear to be relevant to this case, that a personal account cannot be set off against a corporate debt. PDI finally contends it cannot get a fair trial in Butler County.

When the Bank filed its first motion for summary judgment, PDI responded, but failed to set forth in separately numbered paragraphs corresponding to movant's memorandum whether each factual contention is controverted, as required by Supreme Court Rule 141 (1990 Kan. Ct. R. Annot. 110). Although PDI did attach an affidavit by the owners of PDI, it was over 50 pages in length and PDI failed to make precise references to pages, as required by Supreme Court Rule 141.

The Bank moved for an order deeming its statement of facts to be uncontroverted for failure to comply with Rule 141. The trial court held that PDI did not comply with Rule 141 and gave it until May 11, 1990, to file a response that complied with Rule 141. PDI filed an additional document entitled "Plaintiff's Additional Response to Defendant's Motion for Summary Judgment." In this response, PDI did have numbered paragraphs that corresponded with the Bank's motion, but it contained no reference to any evidentiary documents for some of the paragraphs; instead, PDI referred to other pleadings. In the few paragraphs that did refer to evidentiary documents, the references were again vague, such as: "See depositions of the Plummers and their Affidavits, along with the Depositions of defendant's officers." (There were no depositions in the record at trial and there are none on appeal. The depositions were from a previous case and, apparently, were six inches thick.)

At the hearing on summary judgment, the trial court said that PDI had had two chances to comply with Rule 141, and the court was unwilling to give it a third chance. The trial court held the second response was not in compliance with Rule 141, and, thus, PDI "is deemed to have admitted all of the uncontroverted contentions of fact set forth in the Memorandum of the Defendant." The trial court held: "[T]he court further finds that in accordance with said facts, the court hereby grants summary judgment in favor of the Defendant and against the Plaintiff and hereby adopts as its own the uncontroverted facts and conclusions of law set forth in the Defendant's motion and supporting memorandum."

On appeal, PDI does not argue that the trial court erred in holding that it failed to comply. Instead, PDI completely ignores this and argues that some of the uncontroverted facts are controverted.

"Where the appellant fails to brief an issue, that issue is waived or abandoned." *Bazine State Bank v. Pawnee Prod. Serv., Inc.,* 245 Kan. 490, 495, 781 P.2d 1077 (1989), *cert. denied* 109 L. Ed. 2d 502 (1990). Had PDI argued the trial court erred, it would have made little difference. Rule 141 provides:

"No motion for summary judgment shall be heard or deemed finally submitted for decision until:

"(a) The moving party has filed with the court and served on opposing counsel a memorandum or brief setting forth concisely in separately numbered paragraphs the uncontroverted contentions of fact relied upon by said movant (with precise references to pages, lines and/or paragraphs of transcripts, depositions, interrogatories, admissions, affidavits, exhibits, or other supporting documents contained in the court file and otherwise included in the record); and

"(b) Any party opposing said motion has filed and served on the moving party within twenty-one (21) days thereafter, unless the time is extended by court order, a memorandum or brief setting forth in separately numbered paragraphs (corresponding to the numbered paragraphs of movant's memorandum or brief) a statement whether each factual contention of movant is controverted, and if controverted, a concise summary of conflicting testimony or evidence, and any additional genuine issues of material fact which ·preclude summary judgment (with precise references as required in paragraph [a], *supra*).

"The motion may be deemed submitted by order of the court upon expiration of twenty-one (21) days, or expiration of the court ordered extended period, after filing and service on opposing counsel of the brief or memorandum of moving party notwithstanding the failure of the opposing party to comply with paragraph (b), *supra*. In such cases the opposing party shall be deemed to have admitted the uncontroverted contentions of fact set forth in the memorandum or brief of moving party. In determining a motion for summary judgment the judge shall state the controlling facts and the legal principles controlling the decision in accordance with Rule 165." 1990 Kan. Ct. R. Annot. 110-11.

This court has frequently upheld trial court decisions to deem the movant's facts uncontroverted for the respondent's failure to comply. For instance, in *Ruebke v. Globe Communications Corp.,* 241 Kan. 595, 738 P.2d 1246 (1987), the plaintiff's response to a motion for summary judgment contained only general references

to the entire trial transcript. This court upheld the trial court's ruling that the opposing party was deemed to have admitted the uncontroverted facts, saying that the rule vests discretion on the trial court,

"whose sound discretion will not be disturbed on appeal without a clear showing of abuse. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. One who asserts the court has abused its discretion bears the burden of showing such abuse of discretion." 241 Kan. at 604.

Here, the trial court did not abuse its discretion. PDI was given ample opportunity to comply.

On appeal, PDI may not controvert these facts which were deemed uncontroverted. PDI is bound by the uncontroverted facts presented by the Bank. We will, however, consider legal issues based on these uncontroverted facts.

Franklin and Julia Plummer, sole shareholders of PDI, were involved in two cases prior to this one. The Plummers were sued by Alan Mason in Butler County District Court for fraud in connection with another corporation. A jury awarded Mason $11,800. Then, the Plummers (individually and not as a corporation) attempted to sue Prairie State Bank in federal court on what amounts to the same cause of action as is asserted by the corporation in this suit. The federal court granted summary judgment for Prairie State Bank, saying that some of the Plummers' claims were frivolous.

In this case, the trial court adopted the Bank's uncontroverted statement of facts as follows:

"1. Plaintiff, PDI, is a corporation which at all material times hereto was jointly owned by Franklin I. Plummer and Julia A. Plummer.

"2. Defendant PSB is a banking corporation located in Augusta, Butler County, Kansas.

"3. Stockholder Frank Plummer and others became involved in the development of a new product, a charcoal grill, which they attempted to develop and market through a firm called First American Products, Inc. (FAP). Mr. Plummer was the president and inventor of the product being manufactured by FAP. PSB financed the firm's activities.

"4. Mr. and Mrs. Plummer, along with others, were expressly personal guarantors of part of the indebtedness owed by FAP to PSB. On or about May 13, 1986, Mr. and Mrs. Plummer entered into a Loan Guaranty Agree-

ment with PSB in which they agreed to be personally liable on loans by PSB to FAP for up to $9,500.00. In the agreement Mr. and Mrs. Plummer agreed that such amount was immediately due and owing upon FAP's failure to satisfy its obligation and also they expressly waived any required notice of dishonor. FAP closed business and ceased operation in late April of 1987. Two of the three FAP notes came due and owing in May of 1987. Mr. and Mrs. Plummer did not make payment on their personal guarantees when they became due and owing.

"5. At some point, Mr. and Mrs. Plummer moved to the State of Missouri. When the FAP notes became past due and in default PSB was unable to contact either of the Plummers and at that time deemed itself insecure and concluded that the probability of payment, performance and realization on its collateral was substantially impaired. By street rumor, PSB learned that they thought the Plummers had moved to Arkansas but bank personnel were unable to establish contact with either of the Plummers. The bank's telephone calls and letters received no response.

"6. Alan Mason, a co-stockholder in FAP, sued Franklin I. Plummer in the District Court of Butler County, Kansas, Case No. 87 C 184 on June 26, 1987. Mason contended that Plummer told him the assets of FAP were free and clear of debt at the time Mason invested in the corporation, but, in fact, the assets were already mortgaged and Plummer had signed the notes to borrow the money. The case was tried in August of 1988 and the jury found that Mr. Plummer had committed fraud against Alan Mason and awarded Mason judgment in the amount of $11,800.

"7. On or about June 22, 1987, PSB deemed itself insecure with regard to the FAP loans. Such loans were in default and thus the Plummers' personal obligation of $9,500.00 was due. Defendant, at this point incorporates herein all of paragraph 12 of Judge Kelly's decision.

"8. The set-off in question occurred on June 23, 1987 and it was in the amount of $39,721.27. The amount was applied to a note owed by PDI to PSB, being note #99658746. Of the amount set-off, pursuant to an agreement between the parties, on or about July 7, 1987, $20,000.00 was restored to PDI's account leaving the balance of $19,721.27 paid against the PDI note at the bank.

"9. On or about June 29, 1987, a meeting was held in the bank regarding the Plummer Development, Inc. and First American Products, Inc. lines of credit. Those present were James F. Bunck, Dennis Bush, W. Newton Male, Franklin I. Plummer and Julia A. Plummer. The subject of the discussion was the resolution of the bank set-off with regard to the Plummer Development, Inc. bank account. All parties discussed the fact that each had done business without adverse incident for several years. It was unanimously agreed that the current situation was unfortunate. The bank officers explained to the Plummers that they had become increasingly insecure by the unresponsiveness of the Plummers to bank communication. The First American Products line of credit which was personally secured by the Plummers in the amount of $9,500.00 and in which Mr. Plummer was the

president and leader, was in default and that the Plummers had not responded to any of the bank's overtures with regard to setting those matters straight. The Plummers mentioned that they needed at least $20,000.00 from the set-off to cover some checks they had written for projects in Missouri. After several other minutes of discussion, it was ultimately decided that the bank would release from the set-off funds the sum of $20,000.00 to the Plummers and the balance would remain in the bank applied against the notes pending the ultimate resolution of the First American Products, Inc. liquidation. Both parties expressed their desire to show good faith in dealing with the problem at hand and were of the opinion that this was at least an interim resolution to the problems and that all would wait and see how the bank came out on First American Products, Inc. before doing anything more. At the end of the meeting the bank officers were of the opinion that the Plummers left satisfied with this resolution and that the parties would reconvene after the First American Products, Inc. liquidation results were in. This was the last the bank heard from Mr. and Mrs. Plummer until suit was filed. The bank had urged Mr. Plummer to get the guarantors of First American Products, Inc. into the bank so that the bank could liquidate that corporation and see what was left with regard to a deficiency. The meeting with the guarantors of First American Products, Inc., including Mr. Plummer, then later occurred on July 6, 1987. After the meeting, Mr. and Mrs. Plummer again met with the bank officers and again the previous agreement was reaffirmed and the $20,000.00 was released to the Plummers. Since this occurred after 3:00 p.m. the check in the amount of $20,000.00 was not issued until the following day, July 7, 1987.

"10. In March of 1988, PSB, in light of the acts of Mr. and Mrs. Plummer and PDI, continued to deem itself insecure and continued to conclude that the prospect of payment, performance and realization on its collateral with PDI was substantially impaired. In order to maintain its position and recover on the collateral assets before deterioration, PSB decided to foreclose on the mortgage on property owned by PDI and also decided to pursue Mr. and Mrs. Plummer individually on their personal guarantees in favor of First American Products, Inc. Given that it appeared that First American Products, Inc. was not in fact incorporated (Articles of Incorporation not filed with the Register of Deeds) and that Franklin I. Plummer had personally signed the notes of FAP, PSB also decided to pursue Mr. and Mrs. Plummer for the full amount of any loss on the First American Products, Inc. line of credit."

## I. ACCELERATION OF PDI'S DEBT

PDI argues that whether the Bank was justified in accelerating is a controverted fact. PDI argues that the trial court ignored evidence on point.

Whether acceleration of PDI's debt was proper is a conclusion based on facts rather than a fact itself, so this court may review

the uncontroverted facts and determine if the trial court reached a conclusion that is supported by them.

Included in the uncontroverted facts are the relevant part of the notes, which provide that the borrower will be in default under any of the following conditions:

"1. Default in the payment or performance of any obligation, warranty, promise, or liability contained or referred to in this agreement, or in the note or notes evidenced in *any* obligation.

. . . .

"3. Any event which results in acceleration of the maturity of my indebtedness to others under any indenture, agreement or undertaking.

. . . .

"5. Death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver or any part of the collateral, assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against me or any guarantor or surety for me.

. . . .

"9. Any time the lender believes that the prospect of payment of any indebtedness secured by this agreement or the performance of this agreement or realization of the collateral is significantly impaired."

The remedies section of the note provides that in the event of default, the Bank may accelerate the note.

In essence, the argument made by the Bank and adopted by the trial court is that First American Products, Inc.'s debt was in default, the Plummers were guarantors of that debt and were in default on the guarantee, the Plummers were sole shareholders of PDI, and the Plummers could not be located; therefore, the Bank acted in good faith. The Plummers are unable to point to any evidence to the contrary. The only "legal" argument they make is that the Bank did not act in good faith. A reasonable lender in the Bank's position would be justifiably worried. The action taken was in good faith. PDI has no facts in the record showing why the acceleration was not justified.

## II. SETOFF

K.S.A. 9-1206 provides: "Any bank shall have the right to set off any obligation or claim which it has, when the same is matured against any depositor."

PDI argues the Bank improperly set off a corporate obligation against a personal account. The argument .is irrelevant to this

case. This case is a suit by the corporation for the setoff of its account against its indebtedness. The rule of law PDI relies on is not applicable to the facts of this case.

### III. FIDUCIARY RELATIONSHIP

PDI did not assert a cause of action for breach of a fiduciary relationship at trial, nor does it explain on appeal how a fiduciary relationship is relevant. The general rule is the failure to present an issue to the trial court precludes raising the issue on appeal. *Kansas Dept. of Revenue v. Coca Cola Co.*, 240 Kan. 548, 552, 731 P.2d 273 (1987).

### IV. CHANGE IN VENUE

PDI did request a change in venue. It filed an affidavit by the Plummers asserting that it could not get a fair trial before Judge Jaworsky. Judge Jaworsky had observed, as a spectator, part of a previous suit against Mr. Plummer. PDI was of the opinion that rulings by Judge Jaworsky would be in error because he was prejudiced against the Plummers. It also asserted that because its attorney was a Wichita lawyer, *i.e.*, because he was from out of the county, it could not get a fair trial.

In a memorandum, the trial court denied the motion "for the reason verbally stated by the Court into the record which is incorporated herein by reference." There previously had been a hearing on this motion at which the trial court orally stated its reasons for denying the motion. PDI has not included a transcript of this hearing in the record on appeal.

"The burden is upon the appellant to designate a record sufficient to present its points to the appellate court and to establish claimed error." *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 399, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988).

Further, even if PDI had designated the record, it could not prevail on this point. K.S.A. 60-609(b) provides that the party must state "reasons other than the disqualification of the judge." PDI did not request the judge to recuse himself. The only other reason stated by PDI was that it believes it cannot get a fair trial. PDI's argument on this issue is only one sentence in length and is a conclusion, with no facts asserted to support it. No legal

authority is cited. Based on the record before us, the argument is without merit.

Affirmed.