**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 18, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CRAIG MARTEN,

        Plaintiff–Appellant,

v.

HAROLD GODWIN; RONALD
RAGAN; JAMES KLEOPPEL,

        Defendants–Appellees.

No. 10-3227
(D.C. No. 5:08-CV-04031-EFM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

Craig Marten appeals from the district court's entry of summary judgment

in favor of defendants on his claims of First Amendment retaliation and

defamation. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Marten, a licensed pharmacist residing in Pennsylvania, was accepted into the Non-Traditional Pharm.D. ("NTPD") program at the University of Kansas ("KU") in August 2001. The NTPD program allows students to obtain an advanced degree by completing largely online course work. Communications between students and faculty occur primarily via email and telephone. Marten delayed his enrollment in the NTPD program until the Spring 2002 semester.

In the early part of that semester, Marten complained about the computerized grading system to his professors and to defendant Ronald Ragan. Ragan served as the director of the NTPD program and the Associate Dean for Academic Affairs. Marten claimed that he did not receive credit for an exam question that had been "thrown out" even though his fellow students received credit. Ragan allegedly refused to give Marten the credit, and recanted an earlier agreement under which Marten could delay enrollment until the Spring 2002 semester without affecting the five-year time period allotted for completing the NTPD program. Ragan also informed Marten that he had received a number of complaints from Marten's professors concerning unprofessional email correspondence. Ragan counseled Marten to become familiar "with appropriate professional etiquette for communication."

On March 7, 2002, Marten complained to a KU administrator he believed to be "Dean Sorensen" about Ragan's failure to address his concerns.[1] Marten alleged that Ragan called him several hours later, told him he should find a new profession, and threatened to have him kicked out of the program. On May 10, 2002, Marten reported this threat to the KU Ombudsman and the Better Business Bureau of Northeast Kansas ("BBB"). Ragan received a copy of KU's response to the BBB's inquiry on June 24, 2002. Over the following months, Marten sent numerous emails to the American Council on Pharmaceutical Education complaining about the NTPD program.

In the Fall 2002 semester, Marten was enrolled in a course taught by defendant James Kleoppel. Marten submitted an answer to an assigned question that copied verbatim information taken from a website without a source citation. Kleoppel advised Marten on September 25, 2002, that his answer violated the School of Pharmacy's Academic Misconduct Policy because it did not represent independent work. Kleoppel gave Marten a grade of zero for the entire module and reported his conduct to Ragan and defendant Harold Godwin. Godwin was a Professor of Pharmacy Practice, Chair of Pharmacy Practice, and an Associate Dean of the School of Pharmacy.

---

[1] There was in fact no "Dean Sorensen" at KU. The only "Sorensen" at KU was an administrative assistant named Jane Sorensen who worked in the Office of the Vice Chancellor for External Affairs, a department wholly outside of the School of Pharmacy.

Kleoppel again accused Marten of plagiarism in December 2002. He noted that Marten's answers for an activity assignment contained "large sections of text copied word for word from a reference book" and "an exact list from a reference book." The answers "fail[ed] to acknowledge the source" and "inappropriately referenced or failed to reference material correctly." Kleoppel also stated that it was "obvious" Marten had "answer[ed] the questions following the material flow from this same reference," suggesting that Marten did not actually perform the assigned activity.

Kleoppel gave Marten an "F" for the course and, because it was Marten's second incident of academic misconduct, recommended expulsion to Ragan. Ragan and Godwin agreed with the recommendation and asked the School of Pharmacy's Admissions and Standards Committee to review the matter. The six-member committee unanimously concluded that expulsion was appropriate and forwarded its decision to the Dean of the School of Pharmacy, Jack Fincham. Fincham informed Marten of the decision and advised him of his right to appeal to KU's Judicial Board. Marten appealed, but the Judicial Board upheld the expulsion.

Marten then filed this action, claiming that defendants conspired to falsely accuse him of plagiarism in retaliation for the complaints he made about the NTPD program. He brought two claims, First Amendment retaliation under 42

U.S.C. § 1983 and defamation under Kansas law. Defendants filed a motion for summary judgment, which the district court granted.

The district court concluded that Marten had not established a disputed issue of fact regarding the third element of his retaliation claim, that defendants' decision to dismiss him from the NTPD program was substantially motivated by his protected speech. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007) (setting forth elements of retaliation claim). It held there was no evidence that Godwin or Kleoppel had any knowledge of Marten's complaints. As to Ragan, the court concluded that the six-month interval between the last complaint of which Ragan was aware and Ragan's letter recommending expulsion was too long to establish causation based on temporal proximity alone, and that Marten's other evidence carried very little probative value.

With respect to Marten's defamation claim, the district court concluded Marten could not prove that defendants' allegations of plagiarism were false and defamatory, see Hall v. Kansas Farm Bureau, 50 P.3d 495, 504 (Kan. 2002). The court determined that defendants' allegations were opinions and therefore applied § 566 of the Restatement (Second) of Torts (1977). Marten's claim failed because the defendants had "disclosed the bases for their opinions" and the factual bases for defendants' opinions were substantially true, as required under Ruebke v. Globe Communications Corp., 738 P.2d 1246, 1250 (Kan. 1987).

-5-

## II

"We review the district court's grant of summary judgment . . . de novo, applying the same legal standard as the district court." Shero, 510 F.3d at 1200. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Before considering Marten's specific arguments, we note that he has not taken issue with the district court's conclusion that Kleoppel lacked knowledge of his complaints. Accordingly, our discussion of the retaliation claim will be limited to defendants Ragan and Godwin.

Marten argues that the district court should not have measured temporal proximity from March 2002, when Ragan allegedly threatened Marten about his complaints, but from September 16, 2002, when Ragan and Godwin allegedly became aware of his complaints to the American Council on Pharmaceutical Education and had their first opportunity to retaliate against him (i.e., after the summer break). But even if we measure proximity as Marten urges, the nearly three-month gap standing alone is still too long to support a finding that a defendant has acted with an improper motive. See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997). The district court's conclusion regarding proximity thus does not constitute reversible error.

Marten also argues that he actually did provide citations for the material he included in his answers on the December 2002 assignment and thus the question of retaliatory motive should have been submitted to a jury. He further argues this citation rescues his defamation claim. Although Marten attempted to provide some citations for the December 2002 assignment, he concedes his "attribution [was] less than exemplary," and that "reasonable minds could differ as to whether [his] work submitted in December 2002 . . . was not properly cited." Moreover, Kleoppel's recommendation was based on more than an absence of citations; he also considered Marten's inappropriate and incorrect citations as evidence that Marten attempted to pass off the work of another as his own. Kleoppel questioned whether Marten had actually performed the activity assignment because his answers were derived from the "material flow" of a reference book. The KU Judicial Council also noted that Marten had not provided any quotation marks to show where his own words ended and those of his source began. In light of this evidence we agree with the district court that Marten did not raise a disputed issue of fact as to whether defendants' actions were substantially motivated by Marten's protected speech or as to whether the factual bases for their opinions regarding plagiarism were substantially true.

## III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge