NOT DESIGNATED FOR PUBLICATION

No. 124,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER DANIEL KEMMERLY,
*Appellant*,

v.

THE WICHITA EAGLE, CHANCE SWAIM, AMY RENEE LEIKER, CAPTAIN BRENT ALLRED
(WICHITA P.D.), OFFICER PAUL CRUZ (WICHITA P.D.), KAKE NEWS (CHANNEL 10),
FOX KANSAS NEWS (CHANNEL 4), KWCH12 NEWS (CHANNEL 12),
KSCW NEWS (CHANNEL 5), KSN NEWS (CHANNEL 3),
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DEBORAH HERNANDEZ MITCHELL, judge. Opinion filed
May 6, 2022. Affirmed.

*Christopher Daniel Kemmerly*, appellant pro se.

*Bernard J. Rhodes*, of Lathrop GPM LLP, of Kansas City, Missouri, for appellees KSN News and
Fox Kansas News.

*Lyndon W. Vix*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellees The
Wichita Eagle, Chance Swaim, Amy Renee Leiker, KAKE News, KWCH 12 News, and KSCW News.

*Erik S. Houghton*, deputy city attorney, for appellees Brent Allred and Paul Cruz.

Before MALONE, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Seven months after a jury convicted Christopher Daniel Kemmerly
of first-degree murder, he brought a pro se defamation action against several Wichita

media outlets, two reporters, and two Wichita police officers. Kemmerly claimed The Wichita Eagle, Chance Swaim, Amy Renee Leiker, KAKE News Channel 10, Fox Kansas News Channel 4, KWCH12 News Channel 12, KSCW News Channel 5, and KSN News Channel 3 (the Media) defamed him by reporting on his arrest and conviction based on law enforcement reports from Captain Brent Allred and Officer Paul Cruz (Officers). The Media and Officers moved to strike Kemmerly's lawsuit under the Kansas Public Speech Protection Act (KPSPA), K.S.A. 2020 Supp. 60-5320. The district court granted the motions to strike and awarded attorney fees to the Media. After thoroughly reviewing the record, we find no error and affirm the district court's judgment. We also grant the two motions filed by the appellees for reasonable attorney fees incurred in this appeal.

FACTUAL AND PROCEDURAL BACKGROUND

On February 18, 2019, Wichita Police arrested and booked Kemmerly into the Sedgwick County Detention Facility on first-degree murder charges. The following morning, Officers conducted a media briefing identifying Kemmerly as a suspect in the shooting death of Justin Gaston. The Media picked up the story and reported on Kemmerly's arrest based on public records and the information provided by the Officers in the briefing. The news reports also included information about Kemmerly's past convictions, obtained from the Kansas Department of Corrections.

The next day the Sedgwick County District Attorney filed a criminal complaint, charging Kemmerly with the first-degree murder of Gaston and other crimes. The complaint alleged that Kemmerly unlawfully killed Gaston "while in the commission of, attempt to commit, or flight from an inherently dangerous felony, to wit: Distribution of Methamphetamine." The Media reported on the charges against Kemmerly over the following days.

2

On March 7, 2019, the Officers issued a media advisory identifying Reyna Wallace as the other person responsible for Gaston's murder. The Media reported this new information and repeated previous reports about Kemmerly.

On November 22, 2019, Kemmerly was convicted of first-degree murder and other crimes. On January 3, 2020, the Media reported on Wallace's guilty plea and sentence and again included information about Kemmerly's verdict.

Kemmerly filed a defamation action against the Officers and the Media on June 26, 2020. They responded by moving to strike under the KPSPA and filing briefs with affidavits and exhibits to support their claims. Kemmerly responded to the motions and included an affidavit of Linda Rangel-Veal, Gaston's mother, who expressed personal doubts about the evidence presented at Kemmerly's trial. The district court held a hearing on October 9, 2020, but the transcript is not included in the record on appeal.

On November 10, 2020, the district court granted the motions to strike and dismissed Kemmerly's claims with prejudice. The district court also ordered Kemmerly to pay the Media's attorney fees and costs. In granting the motions to strike, the district court found that the Officers and the Media "demonstrated that the claim against them involve[d] their exercise of the right of free speech" and the burden shifted to Kemmerly to "'establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case.'" The district court found that Kemmerly did not present substantial competent evidence that (1) the information published was false; (2) he could "overcome the fair report privilege"; (3) "his defamation claims [were] timely and that he could overcome a statute of limitations defense"; or (4) "his reputation was damaged as a result of [the Officers' and the Media's] statements."

A few weeks later, on December 7, 2020, the district court entered a separate order awarding attorney fees and costs incurred in district court to the Media. Kemmerly timely appealed the district court's judgment.

### DID THE DISTRICT COURT ERR IN GRANTING THE MOTIONS TO STRIKE?

On appeal, Kemmerly claims the district court erred in granting the Media's and the Officers' motions to strike under the KPSPA. More specifically, Kemmerly asserts that (1) false and defamatory words were proven in district court; (2) the fair report privilege does not apply here; (3) the statute of limitations did not expire; and (4) the damages standard cannot realistically be met when the plaintiff is incarcerated. The Officers and the Media respond to these arguments as the arguments apply to them.

Before reviewing the district court's decision, a summary of KPSPA is helpful. In 2016, Kansas adopted K.S.A. 60-5320, the Public Speech Protection Act. L. 2016, ch. 58, § 1. It is known as an anti-SLAPP statute—statutes intended to prevent meritless lawsuits that chill free speech, known as SLAPPs, or "'strategic lawsuits against public participation.'" *T & T Financial of Kansas City, LLC v. Taylor*, No. 117,624, 2017 WL 6546634, at *3 (Kan. App. 2017) (unpublished opinion).

The stated purpose of the KPSPA is

> "to encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2020 Supp. 60-5320(b).

KPSPA "provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." 2017 WL 6546634, at *4. It allows a party

to move to strike a claim if the claim "is based on, relates to or is in response to [that] party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2020 Supp. 60-5320(d). If the movant makes a prima facie case showing that a claim concerns the party's exercise of one of these rights, the burden shifts to the other party to establish a likelihood of prevailing on their claim by presenting substantial competent evidence to support a prima facie case. K.S.A. 2020 Supp. 60-5320(d).

To prove defamation, Kemmerly must show that the Media and Officers knowingly communicated false and defamatory words to someone else and those false statements injured his reputation. See *Hall v. Kansas Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495 (2002) ("The elements of defamation include false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed."). Truth and privilege are affirmative defenses to defamation. *Turner v. Halliburton Co.*, 240 Kan. 1, 7, 722 P.2d 1106 (1986).

The district court found that the Media and Officers met their burden of showing that the claims against them concerned their exercise of free speech and, thus, the burden shifted to Kemmerly to present substantial competent evidence showing a likelihood he could prevail on his claim. K.S.A. 2020 Supp. 60-5320(d). On appeal, Kemmerly does not challenge this finding, he only argues that he presented substantial competent evidence that the statements were false, the fair report privilege did not apply, and he showed damages and so the district court erred in granting the motions.

The Officers argue that Kemmerly did not produce substantial competent evidence establishing the elements of his defamation claim, noting that because he was convicted of Gaston's murder, the Officers' statements were true. The Media argues that the statements were true and that their reports came from official law enforcement sources and therefore "are covered by the qualified privilege to report on matters of public concern."

An appellate court exercises unlimited review of a district court's order granting a motion to strike under the KPSPA. *Doe v. Kansas State University*, 61 Kan. App. 2d 128, 137, 499 P.3d 1136 (2021). Similarly, to the extent our analysis requires interpretation of K.S.A. 2020 Supp. 60-5320, the interpretation of a statute is a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

As stated before, to avoid the motions to strike after the defendants met their initial burden of showing the claims concerned their exercise of free speech, Kemmerly needed to present to the district court substantial competent evidence that he would prevail on his defamation claim. To prove defamation, Kemmerly needed to show that the Officers and the Media knowingly communicated false and defamatory words to someone else and those false statements injured his reputation. *Hall*, 274 Kan. at 276. Based on the record, the district court did not err in granting the motions to strike because (1) Kemmerly failed to show the statements made by the Officers and the Media were false; (2) Kemmerly failed to show he sustained damages based on the statements; and (3) Kemmerly failed to show that the fair report privilege did not apply to the Media.

*The statements were true.*

Kemmerly presented no substantial competent evidence in district court showing that the statements made about him by the Officers and the Media were false. As the district court found: "Plaintiff presents only his own claims of innocence along with the affidavit of Ms. Rangel-Veal in which she states her doubts about the evidence presented at plaintiff's trial. But these claims are directly contrary to the fact that plaintiff was, in fact, found guilty."

On appeal, Kemmerly contends in his brief that the Officers' statements about his case, and the resulting Media reports, were false because his convictions were set aside after the district court granted the motions to strike. Kemmerly does not identify any

specific statement that was false or defamatory, rather he asserts his innocence and conclusively says that "any statements in regards to that conviction are in fact untrue, and are slanderous." The Media and Officers note in their briefs that even if Kemmerly were granted a new trial, he was convicted again of Gaston's murder.

Truth is an absolute defense to defamation. *Cohen v. Battaglia*, 296 Kan. 542, 550, 293 P.3d 752 (2013); see *Turner*, 240 Kan. at 7. Truth is determined at the time of publication. *Ruebke v. Globe Communication Corp.*, 241 Kan. 595, 597, 738 P.3d 1246 (1987). In *Ruebke*, the court found that media reports on Ruebke's murder conviction were true although an appeal was pending and the determination of Ruebke's guilt was not final when the district court granted summary judgment. 241 Kan. at 598.

Kemmerly's argument fails. First, he does not provide this court with a valid record cite to support that his criminal convictions were set aside. Supreme Court Rule 6.02(a)(5) (2022 Kan. S. Ct. R. at 36) ("The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal."). The record on appeal reflects only that Kemmerly was convicted of first-degree murder and other crimes in November 2019, as the district court found.

Second, even assuming Kemmerly's convictions were set aside, he was retried and reconvicted of Gaston's murder according to the appellees. We observe that the appellees' briefs have attached filed-stamped copies of Sedgwick District Court records showing that Kemmerly was convicted again on all charges on November 15, 2021. Although these documents also are not part of the official record on appeal, Kemmerly did not file a reply brief to dispute the information. But more importantly, it does not matter whether Kemmerly's convictions were set aside because even if he were acquitted of all charges, the Media's statements were true at the time of the reporting.

In sum, because truth is determined at the time of publication and later events do not undermine the truth, the statements made by the Officers and Media were true when reported. Kemmerly has not provided substantial competent evidence otherwise.

*Kemmerly did not sustain damages.*

Kemmerly challenges the district court's finding that he did not present substantial competent evidence that he sustained damages as a result of the published statements. Kemmerly argues on appeal that it is both too early to know what reputational damage the reporting has caused him and that his original complaint listed the damages. The Media argues that Kemmerly does not point to actual evidence of damages but only conclusively states he suffered damages.

"Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel." *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 5, 649 P.2d 1239 (1982) (*Globe II*). A valid claim for defamation requires that the plaintiff show injury to his or her reputation. 232 Kan. at 6. Other damages, such as mental anguish, are not recoverable "in the absence of proof . . . [of] injury to reputation." 232 Kan. at 7. A claim for defamation damages must be more than vague and factually unsupported allegations. *Davis v. Hildyard*, 34 Kan. App. 2d 22, 30, 113 P.3d 827 (2005).

Kemmerly listed these damages in his original complaint: lack of financial support from his family resulting in no bond or choice of attorney; lost wages because of incarceration; general harm to his reputation because of local and social media reporting; $2,000-$2,500 in stolen property by Wallace; threats of physical harm to his family; mental distress because of a cellmate's suicide; encounters with Sedgwick County Sheriff's deputies; long-term segregation and solitary confinement; inability to properly communicate with family when his grandmother died; and anxiety and depression.

Kemmerly only once vaguely argued a general harm to his reputation based on the reporting which is not enough to establish damages. See *Davis*, 34 Kan. App. 2d at 30. Kemmerly's woes were caused by his involvement in Gaston's murder and later arrest; not by the Media's statements about the same. He complains of lack of bond money, inexperienced attorney appointment, lost wages because of incarceration, segregation, run-ins with the deputies, and more all associated with being in jail. Assuming his claimed damages resulted from the Media's statements, he cannot recover other damages without proof of reputational harm, which he failed to produce. See *Globe II*, 232 Kan. at 6-7.

*The fair report privilege applied to the Media.*

Kemmerly challenges the district court's finding that the fair report privilege applied to the Media statements because he claims that at the motion to strike hearing the Officers' attorney said the complained-of Media statements "'were not in the [official] transcripts'" of the press briefing or media advisory. Kemmerly reasons that the Media did not "'accurately report information provided to them by law enforcement'" and so granting the fair report privilege was "inappropriate, improper, invalid."

"The defense of privilege is a matter of public policy in the furtherance of the right of free speech. The underlying idea is that by reason of a public or social interest that is entitled to protection, immunity is granted from liability for defamation that otherwise would be actionable." *Knudsen v. Kansas Gas and Electric Co.*, 248 Kan. 469, 480, 807 P.2d 71 (1991). "A qualified or limited privilege is granted to those with a special interest or duty in the subject matter of the communication." *Turner*, 240 Kan. 1, Syl. ¶ 2.

As we noted before, there is no hearing transcript included in the record on appeal. The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Friedman v. Kansas State Bd. of*

*Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013); Supreme Court Rule 6.02(a)(4). Because the transcript is not in the record, we cannot identify or examine the statement Kemmerly says was made at the hearing and establishes error.

Despite Kemmerly's claim, and upon an independent review of the evidence before this court, it appears the Media's statements stemmed from public records, the press briefing, or the media advisory. Whether the Media quoted directly from the transcript of the briefing, or the media advisory, is not the point. The information contained within the reporting was based on and supported by law enforcement information. Thus, the Media's statements were qualifiedly privileged.

The Media argues that Kemmerly did not allege or show actual malice which is required to overcome the fair report privilege. Communications made in good faith, without actual malice, and with reasonable or probable grounds for believing them to be true qualify for the privilege. See *Gobin v. Globe Publishing Co.*, 216 Kan. 223, 227, 531 P.2d 76 (1975) (*Globe I*). Our Supreme Court has recognized a qualified privilege for news publishers. See *Globe I*, 216 Kan. at 233; *Beyl v. Capper Publications, Inc.*, 180 Kan. 525, 526-27, 305 P.2d 817 (1957) ("[I]t is within the qualified privilege of a newspaper to publish in good faith as current news all matters involving open violations of law which justify police interference, and matters in connection with and in aid of the prosecution of inquiries regarding the commission of crime . . . ."). When a qualified privilege exists, the one seeking damages must allege and prove either (1) actual malice for claims made by media about the investigation or arrest or (2) negligence for claims made by the media during judicial proceedings. See *Globe I*, 216 Kan. at 228, 233; *Beyl*, 180 Kan. at 528 (finding petition fatally defective because it did not allege actual malice).

Even assuming the statements about Kemmerly's arrest and investigation were false, he had the burden to provide substantial competent evidence that the Media made the statements with actual malice, a requirement to overcome privilege for the statements

10

made. Kemmerly did not allege that the Media acted with actual malice, nor does he argue on appeal that the Media acted with malice. As in *Beyl*, this is fatal to Kemmerly's argument. See 180 Kan. at 528. As to the published statements about his conviction, it cannot be said that the Media acted unreasonably. A jury convicted Kemmerly of first-degree murder and the Media reported this fact. It is of no consequence that Kemmerly's conviction was later set aside because it was true when the Media published the complained-of statements.

In sum, Kemmerly does not establish a prima facia case that he is likely to prevail on his defamation claim. Kemmerly fails to show that the statements were false, but even assuming the statements were false, he did not allege actual malice or negligence to overcome the privilege defense. Not only can Kemmerly not overcome the affirmative defenses of truth and privilege, he also fails on the required element of establishing damages. Thus, the district court did not err in granting the motions to strike. Based on this finding, we need not address whether the district court erred in ruling on whether Kemmerly could overcome the statute of limitations defense.

MOTIONS FOR ATTORNEY FEES ON APPEAL

The Wichita Eagle, Chance Swaim, Amy Renee Leiker, KAKE News (Channel 10), KWCH 12 News (Channel 12) and KSCW News (Channel 5) (collectively, The Wichita Eagle) timely moved for appellate attorney fees. KSN News separately timely moved for appellate attorney fees. Kemmerly responded to the motions.

Kansas Supreme Court Rule 7.07(b)(1) (2022 Kan. S. Ct. R. at 52) grants appellate courts the authority to exercise the discretion to "award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Here, the district court could award reasonable attorney fees under K.S.A. 2020 Supp. 60-5320(g)(1). In fact, as the district court found, K.S.A. 2020 Supp. 60-5320(g)(1) states

11

that if a defendant prevails on a motion to strike, the court "shall award . . . [c]osts of litigation and reasonable attorney fees." As a result, this court also can award reasonable attorney fees on appeal and should consider the request in light of the statutory provision.

A motion under Rule 7.07(b) must come with a supporting affidavit setting forth the nature and extent of the services rendered, the time expended on the appeal, and the factors considered in determining the reasonableness of the fee. *In re Estate of Oroke*, 310 Kan. 305, 317-18, 445 P.3d 742 (2019). In applying the factors, no one factor controls. *Johnson v. Westhoff Sand Co., Inc.*, 281 Kan. 930, 951, 135 P.3d 1127 (2006). The Kansas Rules of Professional Conduct (KRPC) state:

> "(a) . . . The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent." KRPC 1.5(a) (2022 Kan. S. Ct. R. at 333).

In support of their motions for appellate attorney fees, KSN News and The Wichita Eagle provided this court with (1) the sworn declarations or affidavits of counsel and (2) itemized statements or invoices of the professional services rendered on appeal. The itemized statements/invoices explained the services rendered, when the services were rendered, and by whom. Based on an hourly rate, the total amount of attorney fees for the

12

services performed for KSN News and The Wichita Eagle are $4,692 and $6,525, respectively.

In sum, in moving for appellate attorney fees, KSN News and The Wichita Eagle addressed the nature and extent of the services the appellate attorneys rendered as well as the time they expended on the appeal as required under Rule 7.07(b)(2)(A)-(B). Based on careful review of the attorneys' affidavits, itemized statements, and the above factors, including the novel legal issue and work involved, the requested appellate attorney fees are fair and reasonable, and this court grants the motions for appellate attorney fees and costs.

Affirmed.