(859 P.2d 405)
No. 69,164

NANCY MASTON, *Appellee,* v. SUSAN R. HARPER, *Appellant,* and
SHELTER GENERAL INSURANCE COMPANY, *Appellee.*

Opinion filed September 3, 1993.

*Brian G. Boos* and *Gregory P. Forney,* of Niewald, Waldeck & Brown, of Overland Park, for appellant.

*John J. Murphy* and *Jay F. Fowler,* of Foulston & Siefkin, of Wichita, for appellee.

Before LEWIS, P.J., RULON, J., and MARION W. CHIPMAN, District Judge Retired, assigned.

RULON, J.: Susan Harper, defendant, appeals the district court's entry of judgment for $5,000 in favor of Nancy Maston, plaintiff, for the subrogation interest of plaintiff's uninsured motorist carrier, Shelter General Insurance Company (Shelter), defendant.

The facts are undisputed and are as follows:

In December 1989, Harper, with the vehicle she was driving, struck and injured plaintiff. Plaintiff eventually sued Harper in negligence and also named Shelter, her uninsured motorist carrier, as a defendant. Harper's motor vehicle liability insurance carrier, West General Insurance Company, Inc., (West General), had been declared insolvent and ordered liquidated in a legal action brought by the State Insurance Commissioner. Plaintiff's uninsured motorist benefits through Shelter were limited to $50,000 per person per accident. Harper's policy limits with West General had been $25,000 per person per accident.

Harper moved the district court for a stay of plaintiff's lawsuit or, in the alternative, for summary judgment. Harper argued that

under the court-ordered liquidation of West General, all claims against the defunct insurance carrier were stayed pending further court order. If the stay was not granted, Harper contended she was entitled to judgment as a matter of law pursuant to the Kansas Insurance Guaranty Association Act (Act), K.S.A. 40-2901 *et seq.* Harper maintained that under K.S.A. 40-2910(a), when the claimant's uninsured motorist policy limits are greater than those which had been provided by the defendant's insolvent liability carrier, the Kansas insurance guaranty association was not liable to the claimant. Furthermore, Harper contended the uninsured motorist carrier has no right of subrogation against her for any benefits paid to the claimant.

The district court denied both motions and later entered judgment for plaintiff against Harper. Plaintiff and Shelter had reached a settlement agreement pursuant to which Shelter paid $45,100 to plaintiff under her uninsured motorist coverage. Shelter was thus asserting a subrogation right against Harper for the amount Shelter paid to plaintiff over the $25,000 West General policy limit. But because Harper and plaintiff stipulated that plaintiff was entitled to $30,000 in damages from Harper, the court concluded Shelter, through subrogation, was entitled to only $5,000, the difference between Harper's policy limit and the amount she owed plaintiff in damages. Accordingly, the court entered judgment in favor of plaintiff for the amount of this subrogation interest.

Harper's motor vehicle liability insurer is insolvent, making her an uninsured motorist. Consequently, plaintiff, pursuant to the Act, was required to first seek reimbursement for her injuries from her own uninsured motorist carrier, Shelter.

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy." K.S.A. 40-2910(a).

" 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this act applies issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this act and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim

arises is permanently located in this state. 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise." K.S.A. 40-2903(c).

Pursuant to these provisions, if plaintiff recovered from Shelter an amount less than Harper's $25,000 policy limit with her insolvent insurer, the guaranty association would have been liable for the difference between the amount recovered and $25,000. The association was not liable for any amount, however, because Shelter paid plaintiff $45,100 under plaintiff's uninsured motorist coverage, an amount well above the $30,000 stipulated damage figure and Harper's $25,000 policy limit. Shelter seeks to recover from Harper the $5,000 difference between Harper's $25,000 policy limit with her insolvent insurer and the $30,000 in stipulated damages.

Shelter bases its contention on K.S.A. 40-2901:

"The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders *because of the insolvency of an insurer*, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. This act shall be liberally construed to effect such purpose which shall constitute an aid and guide to interpretation." (Emphasis added.)

Essentially, Shelter argues that the Act does not relieve Harper from liability for the $5,000 Shelter seeks to recover because, had Harper's insurer remained solvent and able to pay on plaintiff's claim for $30,000, the insurer would have paid only $25,000 on Harper's behalf, the limit of her insurance coverage. Shelter claims Harper would have remained personally liable for the extra $5,000 even if her insurer had been solvent. According to Shelter, to relieve Harper of this liability by concluding the Act prohibits an uninsured motorist insurer like Shelter from pursuing a subrogation interest against the insured of the insolvent insurer would in effect give Harper greater coverage for financial loss than she would have had if her insurer had remained solvent. Shelter maintains such a result is contrary to public policy. We agree.

However, a Kansas Supreme Court case clouds our conclusion. In *Bartee v. R.T.C. Transportation, Inc.*, 245 Kan. 499, 781 P.2d

1084 (1989), three plaintiffs were involved in a motor vehicle accident with a tractor owned by Pachiano and a semitrailer owned by R.T.C., a Georgia company. Pachiano and R.T.C. were named as defendants in the negligence suit. Their liability insurance carrier was then declared insolvent and Georgia's counterpart to Kansas' guaranty association assumed defense of the case. The three plaintiffs filed claims with their respective uninsured motorist insurers, one of which was Kansas Fire & Casualty Company (KFC). KFC was allowed to intervene in the suit.

While the plaintiffs in *Bartee* settled with two other named defendants, their claims against Pachiano and R.T.C. proceeded to trial. Judgments entered in favor of the plaintiffs against Pachiano and R.T.C. totalled approximately $500,000. KFC's liability for uninsured motorist coverage was limited to $1.3 million. The district court, finding the plaintiffs' claims against Pachiano and R.T.C. were covered by KFC's uninsured motorist coverage as a matter of law, entered judgment for plaintiffs' damages against KFC.

KFC appealed, raising various issues including a claim that KFC had a right of subrogation against Pachiano and R.T.C. for amounts KFC paid to the plaintiffs under the uninsured motorist coverage. Our Supreme Court first concluded that under Georgia statutes and case law, KFC would not be allowed to exercise subrogation rights against Pachiano and R.T.C. In considering Kansas law, the *Bartee* court noted the Act does not expressly prohibit an uninsured motorist insurer, who must pay uninsured motorist coverage, from pursuing subrogation interests against the guaranty association or an insured whose insurance company is insolvent. The *Bartee* court quoted K.S.A. 40-2901 and referred to K.S.A. 40-2903(c). Regarding the latter section, the court said:

"The provisions of K.S.A. 40-2903(c) seem to prohibit subrogation of the fund by insurers by limiting those claims covered by the Act. Under the second sentence of this definitional provision, a '[c]overed claim' does not 'include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise.' K.S.A. 40-2903(c)." 245 Kan. at 508.

The *Bartee* court ultimately held:

"In denying summary judgment, the trial court correctly concluded Kansas Fire & Casualty was not entitled to subrogation against R.T.C. and Pachiano as tortfeasors. The Georgia statutes explicitly barred Kansas Fire & Casualty from subrogation rights against R.T.C. and Pachiano. The purposes behind the Kansas statutes also require a finding that, under Kansas law, Kansas Fire & Casualty cannot recover from R.T.C. and Pachiano. Therefore, the decision of the district court denying the motion for summary judgment was correct, Kansas Fire & Casualty should be reimbursed for any proceeds plaintiffs receive from Pachiano and R.T.C., but it has no right through subrogation to enforce the judgment against these defendants." 245 Kan. at 509.

Thus, *Bartee* seems to indicate that an uninsured motorist carrier such as Shelter cannot in any instance exercise subrogation against the insured of the insolvent insurer. This prohibition is appropriate in cases where the damages for which the insured is liable do not exceed the limits of the coverage the insured had with the insolvent insurer. In these instances, making the insured pay or reimburse the uninsured motorist carrier would cause financial loss to the insured because of the insolvency of his or her liability carrier. This result would contravene the Act's express purpose. See K.S.A. 40-2901.

In cases such as the one at bar, however, the prohibition actually does contravene the purpose of the Act. "The Guaranty Act was designed to put claimants and policyholders in the same position in which they would have been had the policyholders' insurance company remained solvent." *Hetzel v. Clarkin*, 244 Kan. 698, 706, 772 P.2d 800 (1989). To prohibit an uninsured motorist insurer from recovering the difference between the limit of the insured's policy with an insolvent insurer and the damages for which the insured is liable when those damages exceed the policy limit is to put the insured in a better position than if his or her insurer had remained solvent. If the insurer were solvent, the insured would remain personally liable for any damages exceeding his or her liability policy. Under the blanket prohibition espoused by Harper and evidently endorsed by *Bartee*, this personal liability is erased as long as the insurer is insolvent.

*Bartee* does not provide us the necessary information to determine if facts of that case are directly on point with the instant case. *Bartee* does not state whether the damages for which Pachiano and R.T.C. were liable exceeded the amount of coverage

they had with their insolvent carrier. The policy limits are not recited in the opinion. Nor is comparable information given in the New Jersey case *Bartee* cites as support for its holding on this issue, *Sandson's Bakery v. Glover*, 162 N.J. Super. 225, 225-27, 392 A.2d 640 (1978).

The *Bartee* court also relied upon the last sentence of K.S.A. 40-2903(c): " 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise." The *Bartee* court stated that this language seems to prohibit insurers from subrogating the guaranty association by removing subrogation claims from the definition of claims which the association will pay in the stead of an insolvent insurance company. Subrogation of the guaranty association, however, was not at issue in *Bartee*. Consequently, we understand the *Bartee* court's statement regarding K.S.A. 40-2903(c) is merely dicta and, even if more than dicta, such a holding is not applicable to the issue before us.

Subrogation of the guaranty association also is not at issue in the present case. The association was never involved here because plaintiff's recovery under her uninsured motorist coverage with Shelter exceeded Harper's liability coverage with her insolvent insurer. We conclude, under the facts here, an uninsured motorist carrier may exercise subrogation against the insured of an insolvent carrier when: (1) the damages owed by the insured exceed the insured's coverage with the insolvent carrier; and (2) the uninsured motorist carrier seeks to subrogate the insured only for the amount by which the damages exceed the insolvent carrier's coverage.

Shelter relies on an Ohio case, *Bailey v. Reithmiller*, 46 Ohio App. 3d 27, 545 N.E.2d 928 (1989), as direct support for its position that it may subrogate Harper for the $5,000. While the Ohio court did approve subrogation in cases like the case here, the *Bailey* court relied on the following Ohio statute expressly establishing subrogation rights in these cases:

" 'In the event of payment to any person under the [uninsured/underinsured motorist] coverages required by this section and subject to the terms and conditions of such coverages, the insurer making such payment to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against

any person or organization legally responsible for the bodily injury or death for which such payment is made, including any amount recoverable from an insurer which is or becomes the subject of insolvency proceedings, through such proceedings or in any other lawful manner. *No insurer shall attempt to recover any amount against the insured of an insurer which is or becomes the subject of insolvency proceedings, to the extent of his rights against such insurer which such insured assigns to the paying insurer.'* (Emphasis added.)" 46 Ohio App. 3d at 28-29.

The *Bailey* court found that under the plain meaning of the emphasized language, an uninsured motorist carrier may subrogate the insured for the amount by which its payment to a plaintiff exceeds the insured's policy limit with the insolvent insurer. 46 Ohio App. 3d at 29.

Kansas has no statute similar to that of Ohio, although it does grant insurers subrogation rights for amounts paid under uninsured/underinsured motorist coverage and personal injury protection coverage. K.S.A. 40-287; K.S.A. 1992 Supp. 40-3113a. However, the reasoning used by the *Bailey* court in reaching its decision is just as pertinent under the plainly expressed intent of the legislature in enacting the Kansas Insurance Guaranty Association Act: "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." K.S.A. 40-2901.

Allowing Shelter to subrogate Harper for the $5,000 difference between the $30,000 in damages Harper owes plaintiff and the $25,000 in liability coverage Harper had with her insolvent insurer is not causing Harper financial loss because her insurer became insolvent. Even if the insurer had remained solvent and paid the full $25,000 in coverage, Harper would have been liable for the additional $5,000. We conclude the district court did not err in granting judgment for the $5,000.

Finally, while Harper's notice of appeal states she is appealing the district court's refusal to stay plaintiff's lawsuit pursuant to the insurance company liquidation order, she fails to brief this argument. Where the appellant fails to brief an issue, that issue is waived or abandoned. *Plummer Development, Inc. v. Prairie State Bank,* 248 Kan. 664, 666, 809 P.2d 1216 (1991).

Affirmed.